INTERNATIONAL LONGSHOREMEN'S
AND WAREHOUSEMEN'S UNION,
LOCAL 6, Petitioner,

v.

CUTTER LABORATORIES, Respondent.

No. C–82–2197 RPA.

United States District Court,
N.D. California.

Dec. 22, 1982.

Paul Arons, Gladstein & Arons, San Francisco, Cal., for petitioner.

Wesley Sizoo, Moore, Sizoo & Cantwell, Oakland, Cal., for respondent.

## AMENDED ORDER

AGUILAR, District Judge.

Petitioner union, International Longshoremen's and Warehousemen's Union, Local 6, came to this Court seeking an order to compel arbitration of a dispute with respondent company, Cutter Laboratories. Arguing that Cutter's unwillingness to submit to arbitration constituted "bad faith," the union also sought attorneys' fees for the costs incurred in obtaining the order to compel arbitration.

This Court held a hearing on both of petitioner's motions on September 16, 1982. The Court granted the motion to compel arbitration and ordered further briefing on the question of attorneys' fees. Having considered the arguments submitted by counsel on both sides, the Court finds that petitioner union's counsel is entitled to an award of attorneys' fees.

## FACTS

Petitioner union and respondent company are parties to a collective bargaining agreement. In pertinent part, the agreement provides that:

The decision of the Arbitrator or the Arbitration Board shall be final and binding upon the parties and any expenses of the arbitration shall be shared equally by the parties.

Only grievances arising out of the interpretation and application of the agreement shall be subject to arbitration. Any dispute as to whether a grievance arises out of the interpretation or application of

the Agreement shall be subject to the grievance procedure as herein defined and shall be subject to arbitration.

The union's motion to compel arbitration arose out of a dispute regarding respondent company's attempts to grant special seniority status to a group of employees known as "sub-supervisors." Sub-supervisors are union members who have semi-supervisory responsibilities. Apparently, the company regards this job as very important and considers continuity among sub-supervisors to be a significant corporate goal. Nevertheless, workers do not aspire to the sub-supervisor position and even try to avoid becoming sub-supervisors. Thus, in an effort to keep the present sub-supervisors and to attract new sub-supervisors, the company has devised a plan to grant sub-supervisors a special super-seniority status within the company.

Under the company's plan, sub-supervisors are, in effect, exempt from the company's seniority system. The sub-supervisors are protected from layoff or transfer even though they might have less seniority than other employees.

The present dispute arose when, in August—September 1981, Cutter announced its intention to lay off some employees. These layoffs were accomplished on October 19, 1981, and were effectuated in accordance with Cutter's plan of super-seniority for sub-supervisors. The union, on behalf of other Cutter employees, protested this action. On December 2, 1981, the matter was presented at a grievance meeting. At that time, the company announced that it would not agree to send the question to arbitration. Subsequently, the union came to this Court seeking an order to compel Cutter to submit to binding arbitration.[1]

## DISCUSSION

### 1. Order to Compel Arbitration.

At the hearing on September 16, 1982, the Court granted the union's motion for an order to compel arbitration. The following are the two basic reasons for this ruling. *First,* the language of the parties' collective bargaining agreement states that whenever there is a question about arbitrability, that question should be sent to the arbitrator for a binding decision.[2] Cutter's objection to arbitration in this case seems to be that there is no issue to arbitrate. However, the dispute Cutter suggests, a dispute over arbitrability, is specifically directed to arbitration under the language of the collective bargaining agreement quoted above. *Second,* even if there were doubts about whether the collective bargaining agreement covered this question, the dispute should be sent to arbitration under the general policy favoring arbitration of labor disputes. In *United Steelworkers of America v. Warrior and Gulf Co.,* the Supreme Court stated that ". . . [a]n order to arbitrate the particular grievance should not be denied unless it may be said that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Further, the *Steelworkers* Court warned that in determining whether to send the parties to arbitration, the federal courts' role begins and ends with deciding whether the parties agreed to arbitrate. *Id.* at 582, 80 S.Ct. at 1352.

Cutter may ultimately prevail in the arbitration process. However, the merits of the parties' substantive arguments are of no moment to a court when the issue is whether a matter should be sent to arbitration pursuant to an agreement between

---

1. In the present dispute there is no individual grievant. The union seeks to have an arbitrator invalidate Cutter's entire program of super-seniority for sub-supervisors. Last year the union and the company went to arbitration on a similar question regarding the validity of Cutter's super-seniority program. The case last year did, however, involve an individual grievant. The arbitrator in that case ruled that the super-seniority program was invalid as applied and that the grievant was entitled to relief.

2. The agreement provides: "Any dispute as to whether a grievance arises out of the interpretation or application of the Agreement shall be subject to the grievance procedure as herein defined and shall be subject to arbitration."

the parties. Arguments such as the one advanced by the respondent, that there is no cognizable or arbitrable issue, should be directed to an arbitrator, not to the Court.

Thus, on the question of whether the dispute between the union and Cutter should be sent to arbitration, there was little question. In view of the clear language of the collective bargaining agreement and the strong policy favoring arbitration, this Court ordered that the dispute be sent to binding arbitration.

## 2. Attorneys' Fees.

The basic question to be decided now is whether the petitioner is entitled to attorneys' fees for its successful efforts to obtain the Court's Order to Compel Arbitration.

At the outset it is important to note that federal courts have awarded attorneys' fees in various situations relating to labor-management arbitration proceedings. *See, e.g., International Association of Machinists v. Texas Steel*, 538 F.2d 1116, (5th Cir.1976). *See also, District 50, U.M.W. v. Bowman Transportation*, 421 F.2d 934 (5th Cir.1970); *Painters, Local 756 v. Sherwin-Williams Co.*, 107 L.R.R.M. 2614 (N.D.Tex.1981); *Local 1115 v. B & K Investments*, 100 L.R.R.M. 2175 (S.D.N.Y.1978); *Electrical Workers v. Thomas Electronics*, 96 L.R.R.M. 2236 (N.D. Tex.1977).

■ Given that attorneys' fees can be a suitable remedy in cases involving labor-management arbitration disputes, under what circumstances is such an award appropriate? The basic test is whether the losing party acted in "bad faith." While this term has never been specifically defined in this context, some guidance may be taken from cases in which courts have found bad faith.

Courts have often awarded fees to unions seeking to enforce arbitrator's decisions where the court has found that the employer's refusal to comply was unjustified. "Although Section 301 of the Labor—Management Relations Act does not specifically provide for attorneys' fees, it is clear that when a challenge to an arbitration panel's decision is without justification, these costs

are awardable." *International Association of Machinists v. Texas Steel*, 538 F.2d 1116, 1121 (5th Cir.1976); *see also District 50, U.M.W. v. Bowman Transportation*, 421 F.2d 934 (5th Cir.1970).

Attorneys' fees have also been awarded in an action by a union to collect unpaid company premiums on a group insurance plan. *United Steelworkers v. Butler Manufacturing Co.*, 439 F.2d 1110 (8th Cir.1970). The Eighth Circuit found that the fees were justified because the company's defense to the union claim constituted bad faith.

In a case similar to the instant proceedings, a district court awarded attorneys' fees in a union's suit to compel arbitration where the company's arguments were found to be unjustified and in bad faith and its defense lacked a reasonable chance of prevailing. *Electrical Workers v. Thomas Electronics*, 96 L.R.R.M. 2236, 2241 (N.D. Tex.1977).

■ In this case, petitioner charges that respondent acted in bad faith. The Court agrees with the petitioner. The Court's finding is based upon three factors that taken alone suggest bad faith and taken together constitute compelling evidence of bad faith.

First, the language of the parties' collective bargaining agreement is very clear in stating that questions relating to arbitrability should be sent to binding arbitration. The Agreement states, "Any disputes as to whether a grievance arises out of the interpretation or application of the Agreement shall be subject to the grievance procedure as herein defined and shall be subject to arbitration." In view of the clarity of this language, respondent's efforts to avoid arbitration are quite untenable.

Second, in 1981 the union and Cutter went to arbitration on the question of the validity of the super-seniority program for sub-supervisors. The case that went to the arbitrator in 1981 was different from the instant case in that the 1981 case involved an individual grievant. However, the legal issue in the 1981 case, interpretation of the collective bargaining agreement in light of

the company's efforts to grant super-seniority to sub-supervisors, was the same as in this case. In the 1981 case the arbitrator decided that the special seniority status for sub-supervisors, was the same as in· this case. In the 1981 case the arbitrator decided that the special seniority status for sub-supervisors violated the collective bargaining agreement. Given this prior decision, respondent's attempt to implement the super-seniority program in connection with the August—September 1981 layoffs and respondent's subsequent effort to avoid arbitration of the issue was unjustified.

Third, beyond the unwarranted conduct detailed above, respondent failed to submit any legal arguments in opposition to petitioner's motion to compel arbitration. Respondent submitted only an affidavit from Cutter's Corporate Director of Industrial Relations. This affidavit did no more than restate the respondent's basic position that there was no issue to arbitrate. At the hearing, respondent's attorney maintained that he did not file a brief because there was no need to submit legal argument opposing petitioner's motion. The respondent's position that no legal argument was necessary was belied, however, by the extensive brief that respondent's attorney filed after the Court directed the dispute to arbitration and ordered further briefing on the question of attorneys' fees. Respondent's brief advanced a number of possibly tenable arguments against sending the matter to arbitration. It is completely unclear to the Court why respondent did not raise these arguments earlier. At best, respondent's approach to the issue was cavalier.

Respondent's failure to submit substantive arguments before the hearing caused both the Court and the petitioner unnecessary expense. Thus, based on the above facts, the Court finds that the respondent acted in bad faith with respect to petitioner's desire to arbitrate and with respect to petitioner's motion to compel arbitration. To compensate the petitioner for its unnecessary efforts and to signify the Court's displeasure with the respondent's conduct, an award of attorneys' fees is appropriate in this case.

Given the Court's determination that the respondent acted in bad faith and that the petitioner should not have been forced to bring the issue of arbitrability into federal court, the Court finds that petitioner is entitled to an award of attorneys' fees. Because the Court believes that none of the proceedings in federal court were necessary, the award includes both the costs petitioner incurred in obtaining the Order to Compel Arbitration and the costs incurred in briefing the issue of attorneys' fees. Accordingly, based on the Declaration submitted by petitioner's attorney, the Court awards petitioner $1,034.80 in attorneys' fees and costs.

IT IS SO ORDERED.