76 P.3d 248 (2003)
150 Wash.2d 237
CLARK COUNTY PUBLIC UTILITY DISTRICT NO. 1, d/b/a Clark Public Utilities, Respondent,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Local 125, Petitioner.
No. 72718-0.
Supreme Court of Washington, En Banc.
Argued February 25, 2003.
Decided September 11, 2003.
*249 Rinehat Robblee & Hannah, Richard Robblee, Anne E. Senter, Seattle, McKanna Bishop Joffe, John Bishop, Portland, OR, for petitioner.
Davis Wright Tremaine, Jeffrey Youmans, Seattle, Davis Wright Tremaine, Henry Farber, Bellevue, for respondent.
JOHNSON, J.
In this, our second review of the labor arbitration award in question,[1] we are asked to clarify the standard of review for arbitration *250 awards and apply it to the award here. We conclude that our review is extremely limited. We do not reach the merits of an arbitrator's legal conclusions; we evaluate only whether the arbitrator acted outside of the authority given to her by the parties. We reverse the Court of Appeals and conclude that the trial court should not have invalidated the arbitrator's award.

FACTUAL AND PROCEDURAL HISTORY
In March 1996, Clark County Public Utilities District (the District) laid off ten employees (the Grievants) from positions covered under a collective bargaining agreement (CBA) between the District and the International Brotherhood of Electrical Workers (the Union). The Union submitted a grievance to the District on behalf of the employees, alleging the layoffs violated the terms of the CBA. Unable to resolve the dispute, the parties submitted the grievance to arbitration, as provided by the CBA.

ARBITRATION
The parties stipulated to the arbitrator's authority to issue a binding decision on whether the CBA imposed an obligation on the District to adhere to portions of its personnel policy manual and whether the District violated those portions of the manual when it laid off the Grievants. Clerk's Papers (CP) at 10, 15. The parties also charged the arbitrator with devising the appropriate remedy if she found the District violated the CBA. CP at 15. After a hearing, the arbitrator issued a decision and an award in the Union's favor. CP at 7-43. The arbitrator concluded that the CBA incorporated portions of the District's personnel policy manual by reference, which stated the District would "make every effort" to place a laidoff employee "in a comparable position in compensation and responsibilities" or if a comparable position is not available, in a position "at a lower wage range in which the employee is qualified." CP at 19. She found that in the months surrounding the Grievants' layoffs, the only vacant union bargaining unit positions were ones for which the Grievants were not qualified. However, she also found that the District filled several nonbargaining unit positions, both before and after the layoffs, for which the Grievants were qualified. She concluded that the District violated the terms of the manual that were made binding by the CBA by not making every effort to place the Grievants in the open nonbargaining unit positions.
In reaching her conclusion, the arbitrator examined relevant language of the CBA and the personnel policy manual. She described her role as "seek[ing] a contract interpretation that is most consistent with the parties' evident intent when negotiating the language in dispute." CP at 23. The arbitrator was also aware of the limits on her jurisdiction, acknowledging that "the Collective Bargaining Agreement between the parties, Article 5.7 specifically prohibits the Arbitrator from adding to or amending its terms." CP at 24. The arbitrator found, however, that the CBA gave her the "specific authority to interpret the parties' Agreement ... if she finds the document is ambiguous." CP at 24.
The arbitrator determined that, although relevant language from the CBA appeared clear, as a whole the document was subject to more than one interpretation. The arbitrator read Article 2.6[2] of the CBA to incorporate all consistent language from the personnel policy manual into the CBA. Another CBA provision, Article 6.1,[3] seemed to incorporate only enumerated benefits from *251 the personnel manual. She determined the CBA was therefore ambiguous. CP at 25-26.
The arbitrator acknowledged the District's argument that the more specific language of Article 6.1 superseded the language of Article 2.6. She also took into account the conspicuous disclaimer at the beginning of the manual, which read, "[t]hese personnel policies are not to be construed as a contract or covenant of employment." CP at 28 (capitalization removed). However, the arbitrator rejected the argument that this language precluded the manual from ever being considered part of a contract. She reasoned that doing so would enable the District to "evade its obligations even under Article 6.1" of the CBA. CP at 28. She further determined that Article 2.6 would be superfluous if the manual did not apply to the bargaining unit members. CP at 27. The arbitrator explained,
While both parties advanced plausible theories that would explain the language differences between Article 2.6 and 6.1, the Arbitrator finds that the Union's hypothesis is superior because it conforms to the maxim of contract interpretation which favors giving effect to all words and phrases in a written instrument. The Employer's view, unfortunately, would effectively allow Article 6.1 to cancel out the broader orbit of Article 2.6. The Arbitrator prefers an explanation that truly reconciles the two provisions.
CP at 28.
The arbitrator found support for her conclusion in additional language of the manual and testimony of witnesses. The arbitrator then concluded that the District violated the CBA by not following those provisions that Article 2.6 incorporated from the personnel manual and by not acting in good faith to make "every effort" to place Grievants in vacant positions. CP at 43. The arbitrator interpreted "every effort" to mean that the District had to notify the Grievants of the open positions and use good faith in considering the Grievants for those positions. The District was not required "to waive qualifications or waive its right to select the candidate of its choice" in the nonbargaining unit positions "so long as the Employer [did] not act[ ] arbitrarily, discriminatorily or in bad faith." CP at 38.
The arbitrator ordered the District to offer three of the Grievants specific nonunion positions, with back pay calculated from the dates the appropriate open positions were filled by others until the District offers those positions to the Grievants, reduced by any interim earnings and unemployment compensation.[4] CP at 41-42. Upon a motion to reconsider, the arbitrator amended her award to require only two Grievants to be offered nonunion positions with back pay. CP at 44.

SUPERIOR COURT WRIT OF CERTIORARI AND PRIOR REVIEW BY THIS COURT
The District filed a petition for a writ of certiorari to Clark County superior court under the Washington State Constitution, article IV, section 6.[5] CP at 1. The District alleged the arbitrator's award was illegal because it exceeded her authority under the CBA by awarding the Grievants positions outside the bargaining unit and awarding back pay. The District also alleged the award was arbitrary and capricious. The Union filed a counterclaim, arguing the District's petition for constitutional writ of certiorari was untimely. Clark County Pub. Util. Dist. No. 1 v. Wilkinson, 139 Wash.2d 840, 843, 991 P.2d 1161 (2000). The superior court accepted review and found the arbitrator exceeded her authority by placing the Grievants outside the collective bargaining unit. It also ruled that the District's petition was timely.
*252 In the first appeal stemming from the superior court's ruling, the Court of Appeals held the petition was not timely but did not reach whether the award was arbitrary and capricious or illegal. Clark County Pub. Util. Dist. No. 1 v. Wilkinson, 93 Wash.App. 350, 967 P.2d 1270 (1998), rev'd, 139 Wash.2d 840, 991 P.2d 1161 (2000). This court accepted review on the timing issue, reversed the Court of Appeals, and remanded to the trial court, holding that the petition was timely. Clark County, 139 Wash.2d 840, 991 P.2d 1161. On remand, the parties stipulated that the superior court's original order should be reinstated and that all remaining issues should be appealed. The present case stems from issues raised by the parties after remand.

COURT OF APPEALS DECISION
The second time the arbitration award in question reached the Court of Appeals, that court reviewed whether the award was arbitrary and capricious, or illegal and affirmed the superior court's decision on different grounds. Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, 111 Wash. App. 690, 692, 45 P.3d 1127, review granted, 147 Wash.2d 1020, 60 P.3d 93 (2002). The Court of Appeals held that the arbitrator erred in determining the personnel manual created an enforceable promise and that doing so was arbitrary and capricious. Clark County, 111 Wash.App. at 692, 45 P.3d 1127.
The Court of Appeals acknowledged that it must give "exceptional deference" to an arbitrator's opinion under a writ of certiorari, stating a labor arbitrator is the "final judge of the law and the facts." Clark County, 111 Wash.App. at 694, 45 P.3d 1127 (citing Dep't of Soc. & Health Servs. v. State Pers. Bd. (DSHS), 61 Wash.App. 778, 785, 812 P.2d 500 (1991)). That court understood its review was limited to "`whether the arbitrator interpreted the collective bargaining agreement, not whether [s]he did so correctly.'" Clark County, 111 Wash.App. at 694, 45 P.3d 1127 (emphasis omitted). The court concluded the arbitrator interpreted the CBA when she found it included consistent portions of the personnel policy manual. Clark County, 111 Wash.App. at 695, 45 P.3d 1127.
The Court of Appeals then concluded that the arbitrator erred when she determined that the language from the manual that was incorporated into the CBA obligated the District to use "`every effort'" to place laidoff union employees in open positions. Clark County, 111 Wash.App. at 695, 45 P.3d 1127. The court held the arbitrator's error arbitrary and capricious, despite the deferential standard of review, because "the arbitrator reached this conclusion without discussion." Clark County, 111 Wash.App. at 692, 695, 45 P.3d 1127. The court held that the existence of the conspicuous disclaimer in the policy manual rendered the decision legally wrong. Clark County, 111 Wash.App. at 696-97, 45 P.3d 1127 (citing Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 230, 685 P.2d 1081 (1984)).

ANALYSIS

STANDARD OF REVIEW
As a threshold matter we must clarify the proper scope of a court's review of an arbitration award on a constitutional writ of certiorari. A constitutional writ of certiorari is based on article IV, section 6 of the Washington State Constitution. Under this provision, a superior court has authority to grant writs of certiorari to review decisions, such as the arbitration award at issue here, which are not afforded other means of appeal. Clark County, 139 Wash.2d at 845, 991 P.2d 1161.
Review of an arbitration decision under a constitutional writ of certiorari is limited to whether the arbitrator acted illegally by exceeding his or her authority under the contract. "The fundamental purpose of the constitutional writ of certiorari is to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority." Saldin Sec., Inc. v. Snohomish County, 134 Wash.2d 288, 292, 949 P.2d 370 (1998). Thus, as we concluded in Clark County, the writ of certiorari is the proper procedural vehicle for bringing this matter before the court for review.
When reviewing an arbitration proceeding, an appellate court does not reach *253 the merits of the case. The common law arbitration standard, applicable when judicial review is sought outside of any statutory scheme or any provision in the parties' agreement, requires this extremely limited review. See DSHS at 783-84, 812 P.2d 500, (common law arbitration doctrine persists, despite the enactments of arbitration statutes, to "fill interstices that legislative enactments do not cover"). The doctrine of common law arbitration states that the arbitrator is the final judge of both the facts and the law, and "`no review will lie for a mistake in either.'" DSHS, 61 Wash.App. at 785, 812 P.2d 500 (quoting Carey v. Herrick, 146 Wash. 283, 292, 263 P. 190 (1928)).[6]
This understanding of our extremely limited standard of review for arbitration awards is supported by federal case law.[7] "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); see also E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62, 69, 121 S.Ct. 462, 148 L.Ed.2d 354, (2000) ("`But as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority', the fact that `a court is convinced he committed serious error does not suffice to overturn his decision.'"); Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731, 990 F.2d 957, 960 (7th Cir.1993) ("Arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party. Rather, reviewing courts ask only if the arbitrator's award `draws its essence from the collective bargaining agreement.'"); Richmond, Fredericksburg & Potomac R. Co. v. Transp. Communications Int'l Union, 973 F.2d 276, 282-83 (4th Cir. 1992) ("Nothing would be more destructive to arbitration than the perception that its finality depended upon the particular perspectives of the judges who review the award.")
We note that this differs from our standard of review of administrative decisions under constitutional writs of certiorari. We have reviewed administrative decisions not only for whether the decision was outside the decision maker's authority, but also for whether is it was arbitrary and capricious. See, e.g., Saldin Sec., 134 Wash.2d at 292, 949 P.2d 370 (review of a county council decision reviewed for whether the council's actions were arbitrary or capricious or illegal). A review of an arbitration decision for whether it was arbitrary and capricious would require an examination of the merits. Because we do not review the merits of arbitration decisions, we decline to apply this standard here.
Finally, we note that the procedural posture of this case underscores the importance of an extremely limited standard of review because it highlights the importance of supporting the finality of bargained for, binding arbitration. When parties voluntarily submit to binding arbitration, they generally believe that they are trading their right to appeal an arbitration award for a relatively speedy and inexpensive resolution to their dispute. See Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen & Helpers, 746 F.2d 1316, 1322 (7th Cir.1984). We also note that in the present case, arbitration has not resulted in an expeditious, inexpensive resolution. Since the arbitrator made her award over six years ago, issues stemming from it have reached this court twice, undoubtedly at great expense to the parties. These circumstances reinforce our view that binding arbitration awards are not subject to being vacated by courts, except in the very limited circumstances we outline above.

*254 ARBITRATOR'S AUTHORITY
Applying this standard, we review whether the arbitrator acted outside her authority under the CBA when awarding the Grievants positions outside the bargaining unit. As we explain above, an arbitrator's award is illegal if it exceeds the authority granted to the arbitrator by the parties' contract, here the CBA. The CBA provides,
[t]he Arbitrator shall have no power to render a decision that will add to, subtract from or alter, change, or modify the terms of this Agreement, and his power shall be limited to interpretation or application of the terms of the Agreement.
CP at 349.
The arbitrator was acting within her authority in interpreting the CBA to include all consistent portions of the personnel policy manual. The arbitrator's interpretation of the lay-off provisions of the CBA was that the District was to "first read and apply the applicable collective bargaining agreement. After applying the applicable labor agreement, the consistent provisions of the Personnel Policy Manual should next be applied." CP at 29. The express language of the CBA provides that if a position within the bargaining unit is eliminated, the person losing a position may displace someone else within the bargaining unit with less seniority. CP at 366. According to the arbitrator's interpretation of the parties' intent, if there are no available positions within the bargaining unit, the consistent portions of the manual are to be applied. Section VII(C)(1) of the manual provides "the Utility will make every effort within its judgment of serving the public efficiently to place the employee in a comparable position in compensation and responsibilities" or "a position at a lower wage range in which the employee is qualified." CP at 462.
Because the arbitrator adopted an arguable interpretation of the parties' original intent, she did not expand the terms of the contract. We conclude that the arbitrator was within her authority to interpret and enforce the contract when she found that the District had not made "every effort" to place the laidoff employees in nonbargaining unit positions that were available after the District laid off the Grievants. Regardless of whether we find this interpretation strained, we uphold it because the arbitrator did not exceed the authority given to her under the CBA.
The District also disputes the arbitrator's method of calculating the remedy. The District argues that the nonbargaining unit positions are at-will positions, which means the District could have fired the Grievants on the very day it placed them into those positions. The District therefore contends that the arbitrator did not have authority to place the Grievants in nonbargaining unit positions in perpetuity. The District argues the arbitrator thus acted outside her authority when she awarded back pay beginning from the date the Grievants could have filled the nonbargaining unit positions until the date the District offers the positions to them.
Again, we look to federal case law for guidance. The parties are bound by their consent to have the arbitrator fashion an appropriate remedy. Courts will not overturn the arbitrator's remedy when it is drawn from the essence of the collective bargaining agreement. United Steelworkers of Am., 363 U.S. 593 at 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424; see Amalgamated Transit Union Local No. 1498 v. Jefferson Partners, 229 F.3d 1198, 1200 (8th Cir.2000) (upholding arbitrator's award because the employer was "bound by its consent to have the arbitrator fashion an appropriate remedy"); see also Mogge v. Dist. 8, Int'l Ass'n. of Machinists, 454 F.2d 510, 513 (7th Cir.1971) (upholding back pay past the expiration of the collective bargaining agreement in part because parties had stipulated to the arbitrator's authority to fashion a remedy).
The District brings cases to our attention in which courts have held that the arbitrator's authority to make an award expired with a collective bargaining agreement and have therefore refused to enforce an award of reinstatement and back pay for time after which the bargaining agreement has expired. In one case, the Second Circuit Court of Appeals refused to enforce a reinstatement awarded under an expired collective bargaining agreement when a subsequent agreement placed the job in question outside the bargaining unit. Int'l Chem. Workers Union, *255 Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 45 (2nd Cir.1985). In another case, a federal district court did not enforce an award of reinstatement and back pay after the expiration of the collective bargaining agreement. Hosp. Employees, Local 1273 v. Deaton Hosp. & Med. Ctr. of Christ Lutheran Church, 671 F.Supp. 1049, 1050 (D.Md. 1986). The District argues that the present case is similar because the arbitrator had no authority to place the Grievants in at-will nonunion positions perpetually, even under the arbitrator's construction of the CBA.
Here, the contract did not specify a means of devising an appropriate remedy, and the parties specifically charged the arbitrator with the challenging task of fashioning one. The arbitrator acknowledged that "[f]ashioning a remedy is difficult in this case because there is no easy or obvious appropriate remedy." CP at 40. With little guidance, the arbitrator fashioned an award of damages. She did not attempt to alter the at-will status of the positions, but ordered the District to offer the appropriate positions to the two Grievants. She then measured damages for the violation of the CBA by the amount of pay the two Grievants would have received from the time the positions were filled by others to the date the District offered the Grievants the positions. The record contains no indication that the CBA had expired or been superseded at the time of the award.
After considering the District's arguments regarding the limits of the arbitrator's authority, we find the cases cited by the District distinguishable from the present case because here the arbitrator did not reach beyond the termination of the CBA. Also, the arbitrator did not claim the authority to alter the at-will status of the nonbargaining unit positions. We conclude that the arbitrator's award is a remedy crafted under the authority expressly granted to her by the Union and the District. Given the arbitrator's authority to fashion an appropriate remedy in this case, and our strong preference for upholding arbitration awards in general, we uphold the arbitrator's award as drawn from the essence of the CBA.

CONCLUSION
Both the Court of Appeals and the trial court failed to correctly apply the exceptionally limited standard of review of a binding arbitration award under a constitutional writ of certiorari. The arbitrator acted within her authority to interpret the parties' original intent when she construed the CBA to require the District to "make every effort" to place Union employees in any available non-union position when their jobs are eliminated. The arbitrator also acted within the authority granted to her by the parties when she fashioned a remedy. We reverse the Court of Appeals and trial court and remand to the trial court for further proceedings consistent with this opinion.
NOTES
[1] In the prior appeal, we held a constitutional writ of certiorari must be filed within a reasonable time, subject to the equitable principles of laches. Clark County Pub. Util. Dist. No. 1 v. Wilkinson, 139 Wash.2d 840, 848-50, 991 P.2d 1161 (2000).
[2] Article 2.6 of the CBA states: "The parties recognize that the District has adopted a Personnel Policy Manual dated January 10, 1995, that covers all employees of the District. With regards to any inconsistency between this Agreement and the Personnel Policy Manual, this Agreement shall be controlling." CP at 342.
[3] Article 6.1 of the CBA states in relevant part: "The Personnel Policy Manual of the District sets out the employee benefits for all employees of the Utility. Employees covered by this Working Agreement shall receive those benefits provided for in the Personnel Policy Manual dated January 10, 1995, as indexed and amended in Attachment `A' incorporated herein by reference. The benefits provided shall not be changed, modified, or deleted during the term of this Agreement without the prior written agreement of the Union." CP at 350.
[4] The arbitrator's award requires the District to "place" the Grievants in the positions. CP at 41-42. However, at oral argument, the Union stated that the remedy it currently requests under the agreement, almost seven years after the initial grievance, is an offer to place the Grievants in the positions and an award of back pay.
[5] Article IV, section 6 of the Washington State constitution provides in relevant part that "The superior court shall ... have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.... Said courts and their judges shall have power to issue writs of ... certiorari...."
[6] Common law arbitration also permits judicial review of an arbitration award if "there was a conflict between the method set out in the award and the award itself." DSHS, 61 Wash.App. at 785, 812 P.2d 500. The parties here do no not argue that any such conflict exists.
[7] Our state courts have often looked to federal case law for guidance in analyzing labor disputes. See, e.g., Retail Store Employees Local 631 v. Totem Sales, Inc., 20 Wash.App. 278, 281, 579 P.2d 1019 (1978) ("State courts have jurisdiction over litigation between an employer and a labor organization. However, this jurisdiction must be within the substantive principles of federal labor law." (footnote omitted)).