165 P.3d 1266 (2007)
KITSAP COUNTY DEPUTY SHERIFF'S GUILD; and Deputy Brian LaFrance and Jane Doe LaFrance, and the marital community composed thereof, Appellant/Cross-Respondent,
v.
KITSAP COUNTY and Kitsap County Sheriff, Respondent/Cross-Appellant.
No. 34321-5-II.
Court of Appeals of Washington, Division 2.
June 26, 2007.
Publication Ordered September 5, 2007.
*1267 George E. Merker III, Merker Law Offices, Bainbridge Island, WA, for Appellant/Cross-Respondent.
Brian & Jane Doe La France, c/o George E. Merker, Cline & Associates, Seattle, WA, (Appearing Pro Se).
Jacquelyn Moore Aufderheide, Kitsap Co. Pros. Office, Port Orchard, WA, for Respondent/Cross-Appellant.
PANEL: BRIDGEWATER, P.J.; QUINN-BRINTNALL, J.; PENOYAR, J.
PENOYAR, J.
¶ 1 The Kitsap County Sheriff's Office (the Sheriff) terminated Deputy Brian LaFrance for untruthfulness and erratic behavior. LaFrance and the Kitsap County Deputy Sheriff's Guild (the Guild) filed a grievance against his termination. The parties entered into arbitration, in accordance with their collective bargaining agreement. The arbitrator agreed that LaFrance had repeatedly been untruthful but decided that Kitsap County (the County) could not establish by clear and convincing evidence that termination was the proper form of discipline. It ordered the rescission of LaFrance's discharge and stated that LaFrance could return to full duty if he passed physical and psychological examinations. Ultimately, LaFrance did not feel that the County was acting to implement the arbitration award and he filed a complaint in superior court. Prior to trial, the County filed for summary judgment; it also filed a petition for writ of certiorari requesting review and vacation of the arbitration award. Finding that no genuine issue of material fact existed as to the implementation of the arbitration award, the trial court granted the County's motion for summary judgment, but denied its petition for writ of certiorari. LaFrance and the Guild appeal the grant of summary judgment to the County and urge this court to grant them summary judgment instead. The County cross-appeals, arguing that the arbitration award was unenforceable, and, as such, the trial court was incorrect to deny its petition for writ of certiorari. We agree that the arbitration award was unenforceable as against public policy; we therefore reverse the trial court's denial of writ and vacate the arbitration award.

FACTS
i. Termination
¶ 2 The Sheriff, the County, and the Guild are parties to a collective bargaining agreement (CBA) covering deputy sheriffs employed by the Sheriff.
¶ 3 After increasing concerns about Deputy LaFrance's work and behavior, the Chief of Detectives, Chief Davis, sent Deputy LaFrance a notice of decision and pre-termination hearing on September 11, 2001. The notice listed 29 sustained misconduct incidents and their attendant policy violations. About two months later, a Loudermill[1] hearing was held, which LaFrance attended.
¶ 4 On November 29, 2001, Chief Davis sent LaFrance a notice of termination detailing the specific incidents and violations that were sustained against him, pursuant to the Loudermill hearing. Chief Davis sustained the majority of the incidents outlined in the notice of decision and pre-termination. The sustained incidents affected 13 cases and included: (1) seizure contrary to Department policy; (2) failure to document case in records; (3) failure to treat documents and records according to procedure; (4) failure to follow orders to turn in materials; (5) failure to turn in overtime slips; (6) failure to document investigative activity in report form; (7) failure to properly handle evidence (4 times); (8) lack of candor; (9) failure to secure arrest warrant; (10) failure to file charges; (11) misrepresentation; (12) keeping evidence in his trunk (including computer discs and CDs containing child pornography and a pornographic VHS tape); (13) having an unsecured handgun; (14) failure to complete reports; (15) delay in completion of reports and paperwork; (16) failure to file *1268 case with federal prosecutors after advising the prosecuting attorney to drop State charges; (17) failure to return personal property to arrestee or to admit said property into evidence; (18) failure to properly handle paperwork; (19) downloading pornographic images onto a County computer and transferring them to a Sheriff's office computer; (20) mishandling photo evidence and original reports from Washington State Patrol; (21) failure to follow up on an attempt to locate suspect; (22) mishandling evidence; (23) failure to forward follow-up reports to records; (24) and failure to submit a case to the Prosecutor's Office.
¶ 5 The Guild filed a grievance challenging LaFrance's termination on January 10, 2002, claiming that the termination was not supported by just cause and requesting that LaFrance be reinstated with full back pay and benefits. The Sheriff denied the grievance. The Guild then requested that LaFrance's grievance be submitted to the American Arbitration Association under the terms of the CBA. An arbitrator heard the case in early 2004.
ii. Arbitration
¶ 6 The arbitrator issued its decision on July 21, 2004. It found that the applicable standard of review was just cause  whether the employer had just cause to terminate the employee. It further found that the applicable burden of proof was clear, cogent, and convincing evidence, rather than a preponderance of the evidence, as the County urged.
¶ 7 To determine whether the County had just cause to terminate LaFrance, the arbitrator looked at seven factors: (1) whether the company gave the employee forewarning of the possible disciplinary consequences of the employee's conduct; (2) whether the company's rule was reasonably related to the orderly, efficient, and safe operation of the company's business and the performance that the employer might properly expect from the employee; (3) whether, before administering discipline, the employer made an effort to discover if the employee did in fact violate or disobey a rule or order of management; (4) whether the employer's investigation was conducted fairly and objectively; (5) whether there was substantial evidence that the employee was guilty as charged; (6) whether the employee applied its rules, orders, and penalties evenhandedly and without discrimination; and (7) whether the degree of discipline administered was reasonably related to both the seriousness of the offense and the record of the employee in his service to the employer.
¶ 8 The arbitrator found that the County established the first six elements by clear and convincing evidence, but not the seventh. It found the degree of discipline to be too harsh under the circumstances.
¶ 9 Specifically, it found that LaFrance "was terminated due to his inability to perform his job and his bizarre behavior" and not because he was the victim of a conspiracy, as he claimed. 7 Clerk's Papers (CP) at 78-79. However, it found that the County "failed to show by clear and convincing evidence that the penalty was appropriate for an employee who was clearly suffering from serious health problems." 1 CP at 82.
¶ 10 The arbitrator finally found that the County showed by a preponderance of the evidence that it had just cause to issue three separate final written warnings to LaFrance. It fashioned a remedy as follows:
Since [LaFrance] was not fit for duty at the time of his discharge, he should be made whole by retroactively placing him in the position that he would otherwise have been in. Specifically, Deputy LaFrance should be allowed to access any benefits that an officer in good standing could have accessed as of his date of discharge including sick leave, disability benefits, or any other benefit provided to disabled employees covered by this [CBA]. Since Deputy LaFrance was (and possibly still is) incapacitated he is not entitled to back pay per se, but may keep any Unemployment Insurance benefits for which he is monetarily eligible.
[LaFrance] should also be allowed to return to full duty upon passing independent psychological and physical fitness-for-duty exams as normally utilized by the [County]. The retroactivity of the return *1269 of [LaFrance] to regular status is not an issue in this case due to the lengthy continuance requested by the Guild and necessitated by Deputy LaFrance's heart attack.
1 CP at 83.
¶ 11 The arbitrator upheld the County's misconduct allegations but reduced the penalty to three final written warnings.
The award stated as follows:
The grievance is granted in part and denied in part. Kitsap County has met its burden of proof in showing that Brian LaFrance was disciplined with just cause. The discharge of [LaFrance] is rescinded and he is allowed access to any benefits available to disabled employees as of his date of discharge. The [County] may impose Final Written Warnings for Untruthfulness, Incompetent Performance, and, Failure to Follow Rules and Directives.
1 CP at 84.
¶ 12 Because neither party prevailed, the arbitrator divided fees and expenses equally between the County and the Guild.
¶ 13 The County requested reconsideration, which the arbitrator denied, and the County and the Guild entered into settlement negotiations. The parties negotiated between September and December 2004, and LaFrance's employment was reinstated in October 2004. At that time, he was informed that he could return to full duty upon passing independent psychological and physical fitness-for-duty exams.
¶ 14 By December 2004, LaFrance felt that the County was not implementing the award and asked the Guild to seek its reinforcement. In March 2005, LaFrance was deemed physically fit to return to duty, and the police received a report that he was mentally fit for duty on April 6, 2005. On April 7, LaFrance was instructed to report to work on April 11 at which time he was assigned to a field-training officer for retraining. He was removed from full duty and placed on administrative leave with pay three months later when the Sheriff concluded that LaFrance was not fit for duty due to Brady[2] concerns about his ability to testify.
iii. Trial Court
¶ 15 The Guild filed a complaint in Pierce County Superior Court for breach of contract and to enforce the arbitration award on December 17, 2004.[3] The County moved the court to dismiss for failure to state a claim, which the court denied. The County then filed a stay and petitioned for writ of certiorari to the Kitsap County Superior Court. The Guild filed a motion in that court requesting a change of venue, in order to consolidate the matter in Pierce County Superior Court, which the Kitsap County court granted.
¶ 16 The County then requested the Pierce County Superior Court for leave to assert an after-arising counterclaim  the petition for writ  and to add the Sheriff as a defendant. The Pierce County court granted the motion despite the Guild's opposition. The County then sought summary judgment on the issues in the Guild's complaint (breach of contract, enforcement of the arbitration award, and violations of the federal Fair Labor Standards Act (FLSA) and state wage laws). The Guild and LaFrance filed a cross-motion for summary judgment on the same issues.
¶ 17 The trial court found that the arbitrator had awarded reinstatement of LaFrance's employment effective November 29, 2001 (the date of his discharge), and that the award allowed LaFrance to access benefits that an officer in good standing could have accessed as of his discharge date. It also found that the arbitrator's award did not include an award of back wages, overtime, administrative leave pay, or any other wages. According to the trial court, the effective date of LaFrance's return to full duty and resumption of wages for hours worked was April 11, 2005 (after he had been cleared and *1270 reported for work). The court also noted that LaFrance was offered benefits when the County offered him an election between reinstatement of his leave benefits and payout of his leave benefits, but LaFrance never made an election. Finally, it found that the Guild's claim that the County breached the CBA when it did not remove letters regarding LaFrance's termination from his personnel file was a breach of contract claim and therefore subject to the CBA's mandatory arbitration provisions. Holding that no genuine issue of material fact existed, the court granted the County's motion for summary judgment and denied the Guild's.
¶ 18 The trial court also entered an order denying the County's petition for writ of certiorari, concluding that the trial court should not interfere "with the decision-making process that the parties negotiated and contracted to complete." Report of Proceedings (RP) (Dec. 15, 2005) at 31.
¶ 19 The Guild and LaFrance appeal the trial court's decision granting summary judgment to the County and the Sheriff. The County and the Sheriff cross-appeal the trial court's denial of their petition for certiorari.

ANALYSIS
I. Denial of Motion for Writ and Reversal of Arbitrator's Decision
¶ 20 The County argues that the arbitrator exceeded his jurisdiction and authority under the CBA by requiring reinstatement of LaFrance's employment after concluding that LaFrance was guilty of untruthfulness. In part, the County contends that the arbitrator offended public policy by reinstating LaFrance's employment after finding that he was guilty of untruthfulness. We agree.
¶ 21 Washington public policy strongly favors finality of arbitration awards. Davidson v. Hensen, 135 Wash.2d 112, 118, 954 P.2d 1327 (1998). Accordingly, our Supreme Court has set out an extremely limited standard of review for arbitration awards. Clark County PUD No. 1 v. Int'l Bhd. of Elec. Workers, Local 125, 150 Wash.2d 237, 246, 76 P.3d 248 (2003). Review of an arbitration decision under a constitutional writ of certiorari is limited to whether the arbitrator acted illegally by exceeding its authority under the contract. Clark County PUD No. 1, 150 Wash.2d at 245, 76 P.3d 248. When reviewing an arbitration proceeding, an appellate court does not reach the merits of the case. Clark County PUD No. 1, 150 Wash.2d at 245, 76 P.3d 248. The doctrine of common law arbitration states that the arbitrator is the final judge of both the facts and the law, and "no review will lie for a mistake in either." Clark County PUD No. 1, 150 Wash.2d at 245, 76 P.3d 248 (citing Dep't of Soc. & Health Servs. v. State Pers. Bd., 61 Wash.App. 778, 785, 812 P.2d 500 (1991)).
¶ 22 However, as with any contract, a court may not enforce a collective-bargaining agreement that is contrary to public policy. See W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); E. Associated Coal Corp. v. United Mine Workers of Am., 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000). If the contract as interpreted by an arbitrator violates some explicit, well-defined, and dominant public policy, we are not required to enforce it. W.R. Grace & Co., 461 U.S. at 766, 103 S.Ct. 2177 (citing Hurd v. Hodge, 334 U.S. 24, 35, 68 S.Ct. 847, 92 L.Ed. 1187 (1948) and Muschany v. United States, 324 U.S. 49, 66, 65 S.Ct. 442, 89 L.Ed. 744 (1945)).
¶ 23 In E. Associated Coal Corp., the Supreme Court examined the legality of an arbitration award requiring an employer to reinstate a truck driver who had tested positive for marijuana. 531 U.S. at 59-60, 121 S.Ct. 462. The arbitrator had decided that the driver's positive drug test did not amount to "just cause" for discharge, as required by the parties' collective bargaining agreement. 531 U.S. at 60, 121 S.Ct. 462. Because the employer and the union granted the arbitrator the authority to interpret their agreement, the Court stated that, in order to properly consider the claim, it must assume that the collective bargaining agreement itself called for the reinstatement. 531 U.S. at 61, 121 S.Ct. 462. Therefore, the central issue of the case was whether a contractual reinstatement requirement would render the collective bargaining agreement void as against public policy. 531 U.S. at 62, 121 S.Ct. 462.
¶ 24 In that case, the court upheld the reinstatement provision, finding that the public *1271 policy against intoxicated drivers, as set out in the Omnibus Transportation Employee Testing Act of 1991, was balanced by the Act's equal emphasis on the public policy of rehabilitation. 531 U.S. at 64-65, 121 S.Ct. 462. Because the reinstatement award was not contrary to the several policies, taken together, the award was not void as against public policy. 531 U.S. at 65, 121 S.Ct. 462.
¶ 25 In contrast, LaFrance's reinstatement violates several public policies regarding a police officer's duties to the public. For example, RCW 36.28.010 requires sheriff's deputies to arrest all persons who break the peace, defend the county against those who endanger public peace, execute court and judicial officer orders, and execute all warrants from other public officers. In violation of these clear duties, LaFrance mishandled evidence, neglected to obtain warrants, failed to follow through on cases with prosecutors, and generally conducted himself with a lack of candor.
¶ 26 Also in contrast to E. Associated Coal Corp., here there are no "dominant" public policies favoring reinstatement. LaFrance repeatedly showed a lack of candor and inability to obey either sheriff's department policies, Washington Rules of Evidence, or direct orders from his superiors. Put simply, LaFrance's proven record of dishonesty prevents him from useful service as a law enforcement officer. To require his reinstatement to a position of great public trust in which he cannot possibly serve violates public policy. Therefore, we must reverse the trial court's denial of the petition for writ of certiorari and vacate the arbitration award.
¶ 27 The balance of the issues raised by the parties are rendered moot by the foregoing, and we decline to address them.[4]
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (a prosecutor must release information favorable to an accused upon request). If LaFrance were to testify as a witness in any criminal proceeding, the prosecutor would feel legally and ethically obligated under Brady to disclose LaFrance's history of untruthfulness to defense counsel.
[3] The complaint was later amended to include claims under the Fair Labor Standards Act and Washington State wage laws.
[4] The appellants included a request for attorney fees regarding FLSA and state wage law violations. However, the appellants did not prevail here, and their request is denied. Moreover, neither party devoted a section of their opening brief to the request for attorney fees as RAP 18.1(b) requires; we therefore deny an award of attorney fees to either party. See Phillips Bldg. Co. v. An, 81 Wash.App. 696, 705, 915 P.2d 1146 (1996).