FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUL -3 AM 8: 43

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| OSG SHIP MANAGEMENT, INC., | ) | No. 75477-7-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| SISTO ANDREW, | ) | UNPUBLISHED |
| Appellant. | ) | FILED: July 3, 2017 |

Cox, J. — To vacate an award because an arbitrator exceeded his or her powers, the error must appear on the face of the award.[1] One who seeks to vacate an arbitrator's award has the burden to show that grounds for vacating the award exist.[2] Here, Sisto Andrew fails in his burden to show that the arbitrator in this case exceeded his powers in granting equitable relief to OSG Ship Management Inc. ("OSG"). We affirm the superior court's confirmation of the arbitrator's award.

---

[1] Salewski v. Pilchuck Veterinary Hosp., Inc., P.S., 189 Wn. App. 898, 904, 359 P.3d 884 (2015).

[2] Id.

Because courts do not review an arbitrator's factual determinations, we state the material facts from the arbitrator's award.[3] Andrew worked as a seaman for OSG. In 2009, he fell off a ladder while serving aboard an OSG ship. He sustained personal injuries from the fall.

OSG paid for his medical costs and maintenance. Andrew sued OSG for additional compensation. Trial was set in superior court. Four days before trial, the parties attempted to settle the case by mediation. Both were represented by counsel.

During the mediation, Andrew presented medical expert testimony on the nature and extent of his injuries. He also presented the testimony of a vocational expert. Andrew claimed that he was permanently unable to work at sea based on injuries suffered from the fall.

OSG disputed liability and damages. Nevertheless, it eventually proposed to offer a higher settlement amount if Andrew would agree to a "No Sail" provision. Under this provision, Andrew would surrender his merchant mariner credentials to the United States Coast Guard and relinquish his right to work at sea in the United States for 25 years. Andrew agreed, and the parties reduced their agreement to writing. Both parties signed the settlement agreement and effectuated its terms.

---

[3] Int'l Union of Operating Eng'rs, AFL-CIO, Local 286 v. Port of Seattle, 176 Wn.2d 712, 716 n.1, 295 P.3d 736 (2013).

Months later, following disbursal to Andrew of the $525,000 settlement funds, he disavowed the agreement. He initially claimed to the Coast Guard that his counsel tricked him into signing it.

At the beginning of 2012, Andrew wrote the Coast Guard, informing it that he had fully recovered from his disability. He applied for merchant mariner credentials and obtained them in 2015.

Thereafter, OSG sought arbitration under the terms of the parties' settlement agreement. It claimed that Andrew had materially breached the agreement by failing to comply with the No Sail provision of the settlement.

Andrew testified at the arbitration that he had spent all but $5,000 of the $525,000 in settlement funds. He claimed that the No Sail provision is unfair to him because he cannot earn as much in jobs on shore as he could as a merchant mariner at sea. He also claimed that the No Sail provision is an unlawful restraint of trade.

The arbitrator concluded that Andrew materially breached the settlement agreement. The arbitrator noted that Andrew's argument that the agreement was unfair ignored the fact that he had already received the settlement funds. These funds had compensated him for the diminution of his earning capacity and the expense of retraining for the career suggested by his vocational expert. Because the settlement funds were no longer available, the arbitrator imposed the remedy of injunctive and specific performance. Specifically, the arbitrator ordered Andrew again to relinquish his credentials to authorities, as the No Sale provision required.

3

The superior court entered an order confirming the arbitration award, rejecting Andrew's motion to vacate the award. The court also awarded attorney fees and costs to OSG.

Andrew appeals.

## CONFIRMATION OF ARBITRATION AWARD

The sole argument that Andrew makes on appeal is that the trial court erred in confirming the arbitrator's award because the arbitrator exceeded his powers.[4] He clothes this argument in the claims that the relief the arbitrator ordered violates public policy concerning the merchant marine and unlawful restraints of trade and requires a showing of certain harm to OSG. We disagree in all respects.

We will review an arbitration decision only in certain limited circumstances, as when an arbitrator has exceeded his or her legal authority.[5] "To do otherwise would call into question the finality of arbitration decisions and undermine alternative dispute resolution."[6] Parties that voluntarily submit to arbitration, "'generally believe that they are trading their right to appeal an arbitration award for a relatively speedy and inexpensive resolution to their dispute.'"[7] More

---

[4] Wash. Court of Appeals oral argument, OSG Ship Mgmt., Inc. v. Andrew, No. 75477-7 (June 13, 2017), at 1 min. through 1 min. 23 sec. (on file with court).

[5] Int'l Union of Operating Eng'rs, Local 286, 176 Wn.2d at 720–21.

[6] Id.

[7] Id. at 721 (quoting Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, Local 125, 150 Wn.2d 237, 247, 76 P.3d 248 (2003)).

extensive review "'would weaken the value of bargained for, binding arbitration and could damage the freedom of contract.'"[8]

The party seeking to vacate the award bears the burden to show a statutory ground exists to do so.[9] RCW 7.04A.230(1)(d) permits a trial court to vacate an arbitration award if the arbitrator "exceeded the arbitrator's powers." Under this section, the trial court looks to whether the arbitrator made some legal error that appears "'on the face of the award.'"[10] This standard allows only a "'very narrow ground for vacating an arbitral award.'"[11] "It does not extend to a potential legal error that depends on the consideration of the specific evidence offered" or the merits of the underlying case.[12] "'Where a final award sets forth the arbitrator's reasoning along with the actual dollar amounts awarded, any issue of law evident in the reasoning may also be considered as part of the face of the award.'"[13]

Andrew sued OSG to recover additional compensation beyond OSG's payment of his medical care and maintenance following his injuries. Four days

---

[8] Id. (quoting Kitsap County Deputy Sheriff's Guild v. Kitsap County, 167 Wn.2d 428, 435, 219 P.3d 675 (2009)).

[9] Salewski, 189 Wn. App. at 904.

[10] Id. (quoting Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg, 101 Wn. App. 119, 123, 4 P.3d 844 (2000)).

[11] Id. (quoting Broom v. Morgan Stanley DW, Inc., 169 Wn.2d 231, 239, 236 P.3d 182 (2010)).

[12] Id.

[13] Id. (quoting Cummings v. Budget Tank Removal & Envtl. Servs., LLC, 163 Wn. App. 379, 389, 260 P.3d 220 (2011)).

prior to trial, the parties attempted to settle his claims through mediation. At that mediation, Andrew presented expert medical testimony on the nature and extent of his injuries. He also presented evidence from a vocational expert. His counsel also presented other evidence in support of his claim.

OSG disputed both liability and damages. The parties were unable to reach a settlement on the first day of mediation. At that time, the parties were at least $700,000 apart in their exchanges of settlement offers.

Nevertheless, the next day, for purposes of settlement only, OSG accepted as true that Andrew was permanently disabled. It offered a substantially increased amount, conditioned on Andrew giving up his seaman's credentials to authorities for a period of 25 years. Andrew accepted this offer, and the parties reduced their agreement to writing.

The provision at issue provides:

> [SISTO ANDREW] specifically acknowledge[s] that in consideration of the settlement funds SISTO ANDREW will receive pursuant to paragraph 2 of this Release, SISTO ANDREW will never seek or accept employment with OSG Ship Management, Inc. or any sister, parent, or affiliated company. [SISTO ANDREW] specifically acknowledge[s] that SISTO ANDREW waives any entitlement to future injury benefits, including maintenance and cure, from [OSG Ship Management, Inc.] in the event he breaches this provision. Additionally, [SISTO ANDREW] specifically acknowledge[s] that in further consideration of the settlement funds SISTO ANDREW will receive pursuant to paragraph 2 of this Release, within 15 days, SISTO ANDREW will: (1) notify the U.S. Coast Guard and Seafarers International Union that he is no longer physically capable of performing the duties of a merchant seaman; and (2) surrender his merchant mariner credential [] to the U.S. Coast Guard. [SISTO ANDREW] specifically acknowledge[s] that SISTO ANDREW agrees not to renew or seek reinstatement of his merchant mariner credential, which expires on December 31, 2014. [SISTO ANDREW] specifically acknowledge[s] that SISTO ANDREW agrees that he will not re-apply for any merchant mariner

document or credential in the United States for a period of twenty-five years.[14]

OSG arranged payment to Andrew of the settlement amount of $525,000 to compensate him for his diminution of future earning capacity and the expense of vocational training for the career suggested by his vocational expert. And he effectuated his part of the settlement agreement to relinquish his credentials to the authorities.

Within months of the parties effectuating the terms of the settlement, Andrew disavowed the settlement by claiming that his lawyer had tricked him into signing it. He also testified during the arbitration proceeding that he had spent all but $5,000 of the settlement funds.

The arbitrator reasoned that Andrew breached material terms of the settlement agreement by obtaining his credentials prior to the 25 year term of the agreement. Because Andrew had spent the bulk of the settlement funds, neither restitution nor damages was an available remedy. Accordingly, the arbitrator concluded that equity required injunctive and specific performance relief to avoid unjust enrichment. He then discussed the factors that justified the equitable remedy that he imposed: that Andrew return his merchant mariner credentials to authorities, as the settlement agreement required.

That Andrew materially breached the terms of the settlement agreement is beyond dispute. The question is whether Andrew meets his burden to show that the face of the arbitrator's award shows that he exceeded his powers in making

---

[14] Clerk's Papers at 8-9.

7

this award. Notably, OSG presents authority in support of its position that the injunctive and specific performance remedy was appropriate under the circumstances of this case. That authority is <u>Sea-Land Service, Inc. v. Sellan</u>.[15]

In that case, Pedro Sellan was injured while serving on board a Sea-Land vessel.[16] He brought an injury claim against Sea-Land, and the parties entered settlement negotiations.[17] As part of the agreement ultimately reached, Sellan "gave Sea-Land a release and also agreed not to again sail or work ever again for Sea-Land."[18] He acknowledged in the agreement that his doctors had advised that "'he no longer engage in the career as [a] merchant seaman.'"[19] He agreed that if he attempted to serve again for Sea-Land, he would do so at his own risk.[20]

In consideration of these undertakings by Sellan, Sea-Land paid a substantial sum of money.[21] The agreement was "structured to cover [Sellan's] inability to return to sea for the remainder of his career and was intended to

---

[15] 64 F. Supp. 2d 1255 (S.D. Florida 1999).

[16] <u>Id.</u> at 1258.

[17] <u>Id.</u>

[18] <u>Id.</u> at 1259.

[19] <u>Id.</u>

[20] <u>Id.</u>

[21] <u>Id.</u>

supplement the salary of any sedentary job he obtained."[22] It "included factors such as Sellan's inability to return to work."[23]

He then sought again to work for Sea-Land, taking a union assignment aboard one of its vessels.[24] He suffered another injury on board.[25]

Sea-Land brought an action requesting that the U.S. District Court for the Southern District of Florida declare the earlier settlement agreement enforceable.[26] The court concluded that it was enforceable.

The court first reviewed whether the agreement had been validly formed.[27] It concluded that it had because Sellan had received substantial medical advice and legal counsel.[28]

The court also held that Sellan had ratified the settlement by accepting Sea-Land's payment in consideration.[29] By doing so he was "estopped from

---

[22] Id. at 1261.

[23] Id. at 1262.

[24] Id. at 1259.

[25] Id. at 1260.

[26] Sea-Land Serv., Inc. v. Sellan, 231 F.3d 848 (S.D. Florida 2000).

[27] Sea-Land Serv., Inc., 64 F. Supp. 2d at 1260.

[28] Id. at 1260-61.

[29] Id. at 1262.

attacking the settlement."[30] And the court noted this point with emphasis given evidence that "Sellan ha[d] no intention of returning the money."[31]

Similarly, the court concluded that to allow Sellan to avoid honoring the contract would result in unjust enrichment.[32] Sellan had represented that he "was unable to ever resume work at sea" and entered the agreement without voicing his objection.[33] He later claimed he would not have agreed to "sell his livelihood away."[34] But he had expressed the opposite in settlement negotiations.[35] Thus, the court held that Sellan was "[e]quitably [e]stopped from [e]vading the [s]ettlement [a]greement."[36]

Here, as in <u>Sea-Land Serv., Inc.</u>, Andrew entered into a valid settlement agreement, days before the scheduled trial, with the benefit of both medical experts and legal counsel. He represented at the time of settlement negotiations that he was permanently disabled. For purposes of settlement only, OSG offered a substantial sum. It was designed to compensate Andrew for the loss of work he would experience due to his claimed disability as well as fund his vocational rehabilitation.

---

[30] <u>Id.</u>

[31] <u>Id.</u> at 1263.

[32] <u>Id.</u>

[33] <u>Id.</u>

[34] <u>Id.</u>

[35] <u>Id.</u>

[36] <u>Id.</u>

Andrew accepted the terms offered. And the parties reduced their agreement to writing.

Thereafter, OSG arranged for payment of the substantial sum on which they agreed, and Andrew effectuated his part of the settlement by relinquishing his credentials to authorities. Andrew's acceptance of payment ratified the agreement between the parties.

The one difference between that case and this one is that, not only does Andrew refuse to give back the money, he has no means to do so. In the words of his appellate counsel, "He blew a half-million dollar settlement and is now broke."[37]

Nevertheless, the result is the same. Neither damages nor restitution was available. The equitable remedies of injunction and specific performance were. There is simply nothing on the face of the award to show the arbitrator erred.

Andrew does not directly dispute that the arbitrator had the power to impose the equitable relief of injunction and specific performance for Andrew's material breach of the settlement agreement. Instead, he makes other arguments, none of which is persuasive.

*Dominant Public Policy*

Andrew argues that the arbitrator exceeded his authority by making an award that offended public policy. He makes this argument explicitly regarding the filling of merchant marine billets. And we understand his argument that the

---

[37] Brief of Appellant at 4.

11

No Sail provision was an illegal restraint on trade to concern public policy as well. We disagree with both arguments.

Like any contract, an arbitration decision can be vacated if it violates an "explicit, well defined, and dominant public policy."[38] The policy must be ascertained by reference to statute and precedent and not stem merely from "'general considerations of supposed public interests.'"[39] But in general "'the arbitrator is the final judge of both the facts and the law, and no review will lie for a mistake in either.'"[40]

Andrew first argues that the No Sail provision violates a public policy to fill merchant marine billets. We disagree.

Here, the historic importance of the merchant marine is undisputed. But this public policy is not explicit, well defined, and dominant. First, Andrew presents no authority in statute or case law expressing or defining it. Second, it may be a public policy to fill billets aboard merchant ships. But such a policy does not explicitly bar a merchant mariner from agreeing to surrender his credentials by settlement of a claim for personal injuries. It does not demand a mariner retain his credentials who has declared himself disabled and unable to go to sea.

---

[38] Kitsap County Deputy Sheriff's Guild, 167 Wn.2d at 443.

[39] Id. (quoting Muschany v. United States, 324 U.S. 49, 66, 65 S. Ct. 442, 89 L. Ed. 744 (1945)).

[40] Int'l Union of Operating Eng'rs, Local 286, 176 Wn.2d at 718 n.3 (quoting Clark County Pub. Util. Dist. No. 1, 150 Wn.2d at 245).

Andrew also argues, without citation to authority, that "[s]tripping a worker of *all* right to work in his chosen profession constitutes a restraint of trade."[41] He contends that such a restraint of trade is unlawful, citing RCW 19.86.030. Given the standard of review applicable to arbitration awards, we understand Andrew to argue that the award violated public policy barring restraints on trade. This argument is not persuasive.

Andrew made the same argument in arbitration. The arbitrator, as judge of the law, concluded that the No Sail provision was not a restraint of trade offending RCW 19.86.030. He interpreted the statute to "refer[] to conduct which makes markets less competitive and injures consumers."[42] The No Sail provision, by contrast, had "no anti-competitive impact, nor are consumers adversely affected. Andrew and OSG are not competitors, but parties to a settlement agreement."[43] And the arbitrator emphasized the bargained for nature of the provision.

Andrew cites cases concerning employment noncompete agreements but cites no authority for the proposition that a settlement provision without anti-competitive effect is an unlawful restraint on trade. As such, he has failed to indicate how enforcement of the No Sail provision would offend an explicit, well defined, and dominant public policy.

---

[41] Brief of Appellant at 4.

[42] Clerk's Papers at 15.

[43] Id.

There are also important countervailing policy concerns. Washington law favors the finality of arbitration decisions and settlement.[44] Similarly, a public policy favors freedom of contract.[45] Sea-Land Serv. Inc., discussed previously, illustrates similar policy and equity concerns.[46] Under that case, a party that has signed a No Sail provision is estopped from challenging the provision when he represents himself as unable to sail and accepts the consideration offered in exchange.

Here, all these concerns of policy and equity apply. Andrew entered the settlement agreement with the assistance of medical experts and legal counsel. He represented at the time of settlement negotiations that he was permanently disabled and he accepted OSG's payment. For these reasons, it would be inequitable as a policy matter to vacate the arbitration award enforcing the settlement agreement.

### Harm

Andrew also argues that OSG cannot show harm from Andrew sailing for another company. We disagree.

The arbitrator indicated that "Andrew would be unjustly enriched at the expense of OSG if he was allowed to retain the settlement money and at the

---

[44] Beroth v. Apollo Coll., Inc., 135 Wn. App. 551, 559, 145 P.3d 386 (2006).

[45] Salewski, 189 Wn. App. at 909.

[46] 64 F. Supp. 2d 1255.

same time retain his merchant mariner credentials and work at sea."[47]  Andrew

cannot show how this harm is insufficient.

## ATTORNEY FEES

### Fees Below

Andrew argues the trial court incorrectly awarded OSG attorney fees as

the prevailing party.  We disagree.

Under Washington law, a court may award attorney fees when authorized

by contract, statute, or recognized ground in equity.[48]  And RCW 7.04A.250(3)

allows the trial court to award reasonable fees "[to] a prevailing party" in a

"judgment confirming, vacating without directing a rehearing, modifying, or

correcting an [arbitration] award."

We review de novo whether a contract or statute entitles a party to fees.[49]

There is no legitimate dispute that OSG prevailed at the arbitration

hearing.  Moreover, it is undisputed that the trial court confirmed the arbitrator's

award.  Because OSG prevailed at arbitration, the trial court properly concluded

that it was entitled to fees.  Moreover, the trial court properly awarded fees to

OSG in obtaining confirmation under RCW 7.04A.250(3).

---

[47] Clerk's Papers at 15.

[48] Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013).

[49] Kaintz v. PLG, Inc., 147 Wn. App. 782, 785-86, 197 P.3d 710 (2008).

*Fees on Appeal*

OSG requests attorney fees on appeal. We award it fees.

Here, the same contract and statute that provide for fees below support an award of fees in this court. Such an award is proper, subject to OSG's compliance with RAP 18.1(d).

We affirm the order granting OSG's motion for confirmation of arbitration award pursuant to RCW 7.04A.220 and for entry of judgment thereon. We also award OSG attorney fees on appeal, subject to its compliance with RAP 18.1(d).

Cox, J.

WE CONCUR: