[No. 28111-6-III.    Division Three.    August 5, 2010.]

YAKIMA COUNTY, *Respondent*, v. YAKIMA COUNTY LAW
ENFORCEMENT OFFICERS GUILD, *Appellant*.

306

*James M. Cline* (of *Cline & Associates*), for appellant.

*Kirk A. Ehlis* (of *Menke Jackson Beye Ehlis & Harper LLP*), for respondent.

¶1 SWEENEY, J. — Judicial review of arbitration proceedings is limited. The courts are very deferential to the arbitrator's factual findings and conclusions on the legal questions presented. The superior court here reversed a decision of a labor arbitrator in favor of a law enforcement officers guild, concluding that the guild's claims were untimely, were not brought in the proper forum, and were barred by the doctrine of res judicata or collateral estoppel. We conclude this was error and reverse the court and reinstate the decision of the arbitrator.

## FACTS

¶2 The Yakima County Sheriff's Office is a unionized workplace pursuant to a collective bargaining agreement (CBA).

¶3 Jan Bartleson was hired as a sheriff's deputy in 1995. She generally received positive work reviews until January 2001, when she received a three-day suspension for an on-duty automobile accident. The Yakima County Law Enforcement Officers Guild (Guild) filed a grievance, and the suspension was reduced to one day. Thereafter, Ms. Bartleson's relationship with Sheriff Ken Irwin began to deteriorate. Ms. Bartleson exhausted her paid leave due to a combination of personal injuries, a pregnancy, and family care. Sheriff Irwin and Ms. Bartleson's co-workers were unhappy with the amount of time she was away from her job, although none of her leave was unauthorized.

¶4 In October 2002, Ms. Bartleson requested extended unpaid medical leave as allowed under the CBA. Sheriff

Irwin denied her request. She filed a gender and disability discrimination claim with the Washington State Human Rights Commission. Sheriff Irwin eventually approved the leave. Ms. Bartleson had alleged in her discrimination complaint that she suffered from attention deficit disorder. So Sheriff Irwin required her to undergo a "fit for duty" psychological evaluation as authorized by the CBA. Ms. Bartleson was found fit for duty and returned to work in December 2002. The psychiatrist who treated her (Dr. Agnani) informed the sheriff that people with attention deficit/hyperactivity disorder (AD/HD) can perform effectively at their jobs with treatment.

¶5 In February 2003, Ms. Bartleson's child was accused of misconduct at school. Ms. Bartleson had some discussions with school officials and parents. School officials and members of the community complained to the sheriff about her. The sheriff placed her on administrative leave pending an internal investigation. Sheriff Irwin required her to undergo a second "fit for duty" evaluation with a different psychiatrist of the sheriff's choosing, Dr. Gregory D. Sawyer. Sheriff Irwin was not satisfied that Dr. Agnani had fully addressed his concerns about Ms. Bartleson's fitness for duty. Sheriff Irwin sent Dr. Sawyer a letter. He referenced both her AD/HD and her recent job performance problems. The sheriff sent a packet to Dr. Sawyer that contained write-ups of six incidents of alleged improper conduct going back to 1998. All were investigated and found to be without basis except for one in which Ms. Bartleson acted discourteously but was not disciplined. Dr. Sawyer concluded that Ms. Bartleson was unfit for duty but not due to AD/HD and wrote a report to that effect dated March 12, 2003.

¶6 Ms. Bartleson again requested unpaid medical leave under the CBA on March 20, 2003. Sheriff Irwin directed her to appear for an investigatory interview on March 25. Ms. Bartleson's physician informed Sheriff Irwin that she required medical leave for approximately three months and the interview was cancelled. He granted her unpaid medical leave from April 14 to July 14, 2003, but notified her she

would be discharged from employment on July 15, 2003. The sheriff said that her termination was not for discipline but was the result of Dr. Sawyer's finding her unfit for duty. There were no further internal proceedings before the termination. In a discharge letter dated July 16, 2003, Sheriff Irwin again informed Ms. Bartleson that she was terminated for cause because she was not able to perform the duties of a deputy sheriff and the termination was nonvoluntary and nondisciplinary.

¶7 Ms. Bartleson filed a grievance on July 24, 2003. She alleged illegal termination due to gender and disability discrimination and violation of the CBA disciplinary provisions. Sheriff Irwin denied her grievance. She appealed to the Yakima County Civil Service Commission but withdrew that appeal three days before the scheduled hearing and filed a civil suit instead. The commission dismissed her appeal at her request.

¶8 Ms. Bartleson sued Yakima County (County) in Benton County Superior Court. She alleged statutory causes of action (ch. 49.60 RCW) for (1) gender discrimination and harassment, (2) disability discrimination, (3) retaliation, and (4) wrongful termination in violation of public policy. She also alleged common law causes of action for intentional and negligent infliction of emotional distress, and negligent hiring, supervision, and retention. Specifically, she alleged that the County "negligently evaluated plaintiff's fitness for duty by hiring Dr. Sawyer and using his unprofessional 'evaluation'." Employer's Ex. 18, at 9. She requested damages for past and future lost wages and benefits. The Guild was not a party in Ms. Bartleson's civil service appeal or her civil suit.

¶9 Meanwhile, on August 9, 2003, the Guild filed its own grievance over Ms. Bartleson's termination. The Guild claimed the sheriff violated sections 18.1, 18.3, and 19.3 of the CBA (relating to discipline and related notice procedures). Employer's Ex. 14; Guild's Ex. 1. The Guild's grievance stated it is "concerning the discharge of former Deputy Jan Bartleson" and sought remedies of reinstatement and

back pay. Employer's Ex. 14; Guild's Ex. 1. The grievance did not mention any other deputies. The County claimed Ms. Bartleson's discharge was for medical reasons and therefore not subject to the CBA. The County refused to arbitrate.

¶10 The Guild sued to compel arbitration. The Guild claimed Ms. Bartleson's discharge was a pretext for disciplinary termination of a tenured deputy without the just cause required by the CBA. The superior court ordered arbitration but denied the Guild's request for attorney fees. The Guild and the County both appealed to this court.

¶11 We concluded that there was an ambiguity between CBA section 19.4 (challenges to employment discharge are pursued with civil service commission), and sections 20.2 and 20.3 (allowing arbitration of disputes involving interpretation and application of CBA just cause and discharge provisions). We could not then conclude that the arbitration clause was not susceptible of an interpretation that covers this dispute. *Yakima County Law Enforcement Officers Guild v. Yakima County*, 133 Wn. App. 281, 286, 135 P.3d 558 (2006). Our decision was based in part on the strong presumption favoring arbitrability. *Id.* We also noted that disputes over the procedural prerequisites to arbitration were properly the subject of arbitration. *Id.* at 287-88.

¶12 The County moved for summary judgment in Ms. Bartleson's 2004 Benton County civil discrimination suit. The court granted the motion and summarily dismissed the suit on March 2, 2007. Ms. Bartleson did not appeal that decision.

¶13 The Guild's grievance proceeded to hearing before arbitrator James A. Lundberg on September 11, 2007.

¶14 The arbitrator rejected claims by the County that the Guild's grievance was untimely and barred by res judicata or collateral estoppel because of Ms. Bartleson's civil service appeal and civil suit. The arbitrator also rejected the County's arguments that medical discharges were exempt from review under the CBA and the Yakima

County Civil Service Commission General Rules and Regulations (rev. Oct. 7, 2002) incorporated into the CBA. He explained that the civil service rules require "cause" to terminate a tenured employee and the CBA requires "just cause" to discipline a tenured employee. The civil service rules list 11 disciplinary reasons why a deputy may be terminated, including mental unfitness for the position. Employer's Ex. 2, at 10-11 (Civil Service Rule XIII § 4(a)-(k)). He concluded that nothing in the CBA exempts mental unfitness for a position from the CBA. Thus, the "just cause" standard applies to a tenured employee who was discharged based upon claims of unfitness. *In re Arbitration between Yakima County and Yakima County Law Enforcement Emps.' Guild*, No. 20549-P-06-759, at 40-42 (Wash. Pub. Emp't Relations Comm'n Dec. 27, 2007) (hereafter Arbitrator's Decision).

¶15 The Guild's expert, clinical psychologist Dr. Kathleen Pollock, testified that accepted law enforcement standards for fitness for duty determinations require objective testing standards. Dr. Pollock examined Ms. Bartleson and concluded she was fit and should not have been terminated. The arbitrator found that Dr. Sawyer did not use objective tests to evaluate Ms. Bartleson but instead relied on rumor and hearsay, including some allegations that were actually false. The arbitrator found that Dr. Sawyer was not credible and rejected Dr. Sawyer's report and conclusions that Ms. Bartleson was unfit for duty.

¶16 The arbitrator concluded that Sheriff Irwin violated the CBA because he violated just cause requirements and did not conduct the required predischarge hearing:

> The idea that Ms. Bartleson was discharged for anything other than disciplinary reason has no factual basis and is completely without merit. The only issue presented to Dr. Sawyer that was not entirely a disciplinary issue was whether Ms. Bartleson's AD/HD was affecting her job performance. In his report dated March 12, 2003 Dr. Sawyer wrote about AD/HD *"this illness is not causing the kind of behaviors I'm seeing or have been documented today."* Concluding that disci-

plinary issues were inalterably intertwined in the Sheriff's referral to Dr. Sawyer, inalterably intertwined in Dr. Sawyer's report and inalterably intertwined in the final decision to terminate Ms. Bartleson would be an understatement of the facts. Ms. Bartleson was discharged for unproved allegations of misconduct and poor job performance. As a Guild member she had a contractual right to a fair, thorough and complete factual investigation and as a Guild member she had a contractual right to a *Loudermill*[1] hearing. Failure to afford a discharged tenured employee a hearing pursuant to **Section 19.1** of the [CBA] is such a serious contract violation that **no remedy short of reversing the discharge is appropriate**.

Arbitrator's Decision at 46-47 (footnote omitted). And he found that "[t]he treatment of Ms. Bartleson in this situation demonstrates a complete and utter failure on the part of the County to apply the basic principles of fairness that form the basis for the just cause standard and are at the core of industrial justice." Arbitrator's Decision at 47.

¶17 The arbitrator ordered Ms. Bartleson reinstated with back pay and benefits, on condition that she participate in an employee assistance plan. The arbitrator also ordered that the sheriff and three of his supervisors take training on methods of conducting internal investigations and counseling to improve interaction and relationships with Ms. Bartleson and other employees who experience personal crisis or tragedy.

¶18 The arbitrator also agreed with the Guild's claim that the County acted "without justification" and clearly breached the CBA by refusing to arbitrate the grievance. And he ordered the County to reimburse the Guild for attorney fees incurred to judicially enforce the arbitration clause. The arbitrator ruled that if reinstatement was not possible then Ms. Bartleson would be entitled to an award of back pay and future pay. The arbitrator retained jurisdiction over the remedy.

---

[1] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

¶19 The County refused to comply with the arbitrator's decision and petitioned for review in superior court. The County claimed that the arbitrator had exceeded the authority granted him by the CBA for a number of reasons. The Guild sued for a declaration that the CBA had been breached, to enforce the arbitrator's award, for double the wages owed Ms. Bartleson, and for additional attorney fees for postarbitration court action. The court consolidated both suits.

¶20 The superior court then concluded that (1) the Guild's grievance of Ms. Bartleson's termination was time barred; (2) the proper venue for any disciplinary discharge under the CBA was with the Yakima County Civil Service Commission, not arbitration; and (3) the grievance was barred by res judicata/collateral estoppel because Ms. Bartleson dismissed her civil service appeal and her civil suit. The court then concluded that the arbitrator had exceeded his authority by allowing the grievance to go forward. It vacated the arbitrator's award and dismissed the Guild's actions for declaratory judgment and breach of contract. The Guild appeals.

## DISCUSSION

Standards of Review

¶21 We afford great deference to the decisions of a labor arbitrator. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960). Public policy here in Washington strongly favors the finality of arbitration awards. *Davidson v. Hensen*, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998). Judicial review of arbitration awards is therefore extremely limited. *Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, Local 125*, 150 Wn.2d 237, 246, 76 P.3d 248 (2003). "Review of an arbitration decision under a constitutional writ of certiorari is limited to whether the arbitrator acted illegally by exceeding his or her authority under the contract." *Id.* at 245; *see Kitsap County Deputy Sheriff's Guild v. Kitsap*

*County*, 167 Wn.2d 428, 434, 219 P.3d 675 (2009); *City of Yakima v. Yakima Police Patrolman's Ass'n*, 148 Wn. App. 186, 192, 199 P.3d 484 (2009). We review de novo whether the arbitrator acted within the scope of the authority granted him or her by the CBA. *Klickitat County v. Beck*, 104 Wn. App. 453, 460-61, 16 P.3d 692 (2001). We do not pass on the merits of the dispute; the arbitrator is the final judge of both the facts and the law, and " 'no review will lie for a mistake in either.' " *Clark County Pub. Util. Dist.*, 150 Wn.2d at 245 (internal quotation marks omitted) (quoting *Dep't of Soc. & Health Servs. v. State Pers. Bd.*, 61 Wn. App. 778, 785, 812 P.2d 500 (1991)). Necessarily then, we do not review the arbitrator's decision under the arbitrary and capricious standard because to do so would require that we pass on the merits of the dispute. *Id.* at 246-47; *cf. Beck*, 104 Wn. App. at 460-61.

¶22 The Guild's essential argument is that the issues raised by the County's challenge to the arbitrator's jurisdiction have already been decided. And so the County's resurrection of these procedural objections rejected by the arbitrator is barred by law of the case and collateral estoppel. The Guild argues that this court already ordered arbitration and directed the arbitrator to decide these procedural questions. The arbitrator did so and, given our review standards, the Guild argues his decisions are, or should be, final, binding, and beyond further review. Thus, the superior court erred in vacating the arbitration award. The County responds that the question whether the arbitrator exceeded the authority vested in him by the CBA is properly the subject of judicial review.

PROPER FORUM

¶23 The Guild contends that arbitration, not the Civil Service Commission, is the proper forum for the Guild's grievance and, moreover, this court has already decided this. The County responds that the superior court got this right because the arbitrator found that Ms. Bartleson's termination was a *disciplinary pretext*. The County then urges that

the superior court correctly determined that the arbitrator exceeded his authority by reading out of the contract section 19.4, which expressly and unambiguously places disciplinary "discharges" with the Yakima County Civil Service Commission.

■■ ¶24 We passed on this question in the first appeal and concluded that the Guild's grievance was properly the subject of arbitration. *Yakima County Law Enforcement Officers Guild*, 133 Wn. App. at 286. CBA section 19.4 provides,

> An *employee* shall have the right to have a disciplinary action against him/her reviewed for just cause and severity of discipline pursuant to the provisions of this section as follows:
>
> . . . .
>
> B.   Disciplinary action resulting in . . . discharge, shall be reviewed by the Yakima County Civil Service Commission.

Guild's Ex. 44, at 15 (emphasis added).

¶25 Section 19.4, by its terms, then applies to an employee's review action and not to a grievance filed by the Guild. Ms. Bartleson appropriately sought Civil Service Commission review of *her* grievance. She dismissed her appeal. There is no election of remedies clause in the CBA. And again we have already concluded that the *Guild's* grievance (at issue here) is properly the subject of arbitration:

> [W]hile section 19.4 negates the right to arbitrate discharge issues, sections 20.2 and 20.3 grant arbitration for disputes involving the interpretation and application of the CBA, such as the parties' dispute over the interpretation and application of the just cause and discharge provisions. Therefore, an inconsistency exists between section 19.4 on one hand and sections 20.2 and 20.3 on the other hand.

*Yakima County Law Enforcement Officers Guild*, 133 Wn. App. at 286. We resolved the conflict in favor of arbitration given this ambiguity and the strong presumption favoring arbitrability. *Id.*

■ ¶26 The County's arguments are the same as those raised in the first appeal. The matter has been decided and

is the law of the case. *See Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005).

TIMELINESS OF GRIEVANCE

¶27 Again, the Guild contends that the question whether this grievance was timely has already been decided—it was referred to the arbitrator by this court. *Yakima County Law Enforcement Officers Guild*, 133 Wn. App. at 287-88. The Guild maintains that the arbitrator acted within that authority when he concluded that the grievance was timely. And, again, the arbitrator's decision cannot be subject to further review.

¶28 The County responds that the superior court correctly concluded that the Guild's grievance was time barred under the express terms of the CBA. Section 20.5 unambiguously requires that grievances be pursued within 30 days of the occurrence leading to the grievance. So the arbitrator exceeded his authority by finding the grievance timely under section 20.6—that the grievance affected more than one employee—when the grievance expressly pertained only to Jan Bartleson. The arbitrator then exceeded the scope of his authority under CBA section 20.8 step 3(e)(iii), which allows him to decide only the issues raised by the grievance. Moreover, the County continues that the triggering date for the Guild's grievance was March 31, 2003—the date Ms. Bartleson and the Guild were given notice that she was terminated. The County urges that the superior court correctly concluded that arbitration of the grievance is time barred since the Guild did not file the grievance until August 9, 2003.

■■ ¶29 We decided in the first appeal that "questions of procedural arbitrability, those 'concerning the procedural prerequisites to arbitration,' should be resolved by an arbitrator," and that included the County's contention that the Guild's claims were time barred. *Id.* (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556-57, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964) (arbitrator decides if preliminary procedural steps completed in grievance proce-

dure)). The arbitrator should decide " 'allegation[s] of waiver, delay, or a like defense to arbitrability.' " *Id.* at 288 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). Whether a time limit bars arbitration should be decided by the arbitrator as a threshold question. *Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc.*, 148 Wn. App. 400, 405, 200 P.3d 254 (2009). Again, " '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " *Id.* at 406 (alteration in original) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (contract requiring demand for arbitration within six years of date of occurrence was an issue of procedural arbitrability for arbitrator to decide, not an issue of substantive arbitrability for the court). These authorities easily answer the County's challenge.

¶30 CBA section 20.8 sets out a three-step grievance procedure. The third step is final and binding arbitration. The arbitrator decides whether the contract was violated:

> The arbitrator shall consider and decide only the questions or issues raised at Step 1 and/or Step 2 and shall have no authority to determine other issues not so submitted. If the parties fail to agree on joint submission of the issue for arbitration, each party shall submit a separate submission and the arbitrator shall select from the issues submitted and determine the issue or issues to be heard and resolved.

Guild's Ex. 44, at 17 (CBA § 20.8 Step 3(e)(iii)).

■■■■■■ ¶31 An employee must file a grievance within 30 days of its occurrence or the employee "waive[s] all rights and remedies under this Article relating to said grievance." Guild's Ex. 44, at 16 (CBA § 20.5). But this 30-day time limit does not apply if the Guild files a grievance that affects more than one employee. Guild's Ex. 44, at 16 (CBA § 20.6).

¶32 The Guild filed its grievance on August 9, 2003, "concerning the discharge of former Deputy Jan Bartleson." Guild's Ex. 1. The grievance alleged violations of CBA sections 18.1 (just cause), 18.3 (progressive discipline), and 19.3 (notice and opportunity to respond before final disciplinary action). Guild's Ex. 1; *see* Guild's Ex. 44, at 13, 15. The grievance sought reinstatement and back pay. The grievance did not mention any deputies other than Ms. Bartleson and did not seek any form of class relief. Guild's Ex. 1.

¶33 The arbitrator concluded, nonetheless, that the grievance was not time barred because any arbitration ruling would affect more than one employee:

> While the grievance challenges a single discharge, the manner in which the Employer may discharge a non-probationary employee affects the entire organized work force. The above captioned grievance by the Guild, which challenges whether the Employer's treatment of Ms. Bartleson was consistent with the terms of the [CBA], does affect more than one employee. Hence, the Guild grievance was filed in a timely manner.
>
> The essence of the Guild's grievance is that the Employer substituted a "fitness for duty examination" for the disciplinary procedures of the [CBA], which afford non-probationary employees due process rights in order to summarily terminate the grievant from employment. According to [CBA] Article 20, Section 20.8 Step 3: (e)(ii) "the arbitrator shall have the power to interpret and apply the terms of the Agreement and to determine whether there has been a violation of the terms of the Agreement." The Guild is asking whether the Employer violated the [CBA] by using the procedure it adopted when it discharged the grievant. The grievance is arbitrable.
>
> The Guild's grievance seeks specific remediation of the alleged harm to Ms. Bartleson. However, requesting remediation of the harm done to Ms. Bartleson does not remove the grievance from the scope of Article 20.6.

Arbitrator's Decision at 8-9.

¶34 The superior court disagreed and concluded that the essence of the grievance was Ms. Bartleson's termination

and that the grievance did not implicate general employer practices, and the grievance was therefore untimely.

¶35 The 30-day time limit in CBA section 20.5 applies to grievances filed by the employee, not the Guild. Section 20.6 applies to grievances filed by the Guild and does not apply to employees. The filing of a grievance or appeal to the Civil Service Commission by an employee does not preclude the filing of a grievance by the Guild, as there is no election of remedies clause in this CBA. *Civil Serv. Comm'n v. City of Kelso*, 137 Wn.2d 166, 177, 969 P.2d 474 (1999) (court will not impose election of remedies clause where none has been bargained for by the parties).

¶36 Here, the arbitrator resolved the procedural question by interpreting the CBA to mean that more than one employee (in fact the whole workplace) is affected if the County circumvents the progressive discipline/notice procedures in the CBA by discharging a nonprobationary employee by pretext. The grievance here may well have involved a single employee, but the standard in section 20.6 is whether the grievance *affects* more than one person. And that was a decision for the arbitrator, not the courts. *Yakima County Law Enforcement Officers Guild*, 133 Wn. App. at 288; *Heights at Issaquah Ridge*, 148 Wn. App. at 406.

¶37 Here, the arbitrator interpreted the contract to resolve doubts in favor of arbitration. He was supposed to do just that. The arbitrator also noted prior cases in which the County had agreed to arbitrate Guild grievances filed on behalf of its members, including the grievance arising from Ms. Bartleson's 2001 automobile accident. *See* Arbitrator's Decision at 50-52; Guild's Ex. 123; *Meat Cutters Local No. 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 156, 627 P.2d 1330 (1981) (past practices are an implied part of a bargaining agreement and may be considered by arbitrator in resolving a dispute).

¶38 The County also argues that even if CBA section 20.6 applies, the relief to Ms. Bartleson can be prospective only from the date of the grievance because the Guild did not file it within 30 days of March 31, 2003—the date it

learned Ms. Bartleson would be terminated in July. Br. of Resp't at 18-19. But again, the grievance challenges the fact of her discharge without just cause, progressive discipline, or notice and opportunity to respond before final disciplinary action. The final disciplinary action did not occur until she was discharged on July 15, 2003. The Guild filed the grievance less than 30 days later on August 9. And we will defer to the arbitrator's decision on this procedural issue.

¶39 We conclude then that the arbitrator did not exceed his authority under the CBA in determining that the Guild's grievance was timely under section 20.6. The superior court erred in finding the grievance time barred.

RES JUDICATA/COLLATERAL ESTOPPEL

¶40 The superior court ruled that the Guild's claim for reinstatement and lost wages for Ms. Bartleson was barred by res judicata and collateral estoppel because she raised the same claim in her civil service appeal and civil suit, and she was "in privity" with the Guild for purposes of this grievance filed solely on her behalf. The superior court thus appropriately ruled that the Guild was precluded from pursuing the same action independently and that the arbitrator erred by allowing the grievance to go forward. Clerk's Papers (CP) at 39-40 (Mem. Decision at 8).

¶41 The Guild contends this was wrong because CBA section 20.8 step 3(e)(iii) gives the arbitrator authority to determine which issues are to be decided to resolve the grievance. The Guild also argues that the County submitted the issues based on res judicata and collateral estoppel to the arbitrator and so his decision is now final and binding. This waiver standard, the Guild argues, necessarily follows from the principle that an arbitrator's decision is binding without regard to factual or legal error, so long as the decision relates to the CBA.

¶42 The County responds that the superior court correctly applied both res judicata and collateral estoppel because the issue in both Ms. Bartleson's civil service appeal and her civil suit was her fitness for duty. And in both

actions, she, and the Guild on her behalf, sought reinstatement and lost wages. It argues that the parties to both suits are identical because Ms. Bartleson and the Guild have been in privity in all three proceedings in which Yakima County was the only defendant. The County argues that the effect of the arbitrator's decision is to ignore the Benton County Superior Court's final judgment on the merits in her civil suit and the Civil Service Commission's final action on her civil service complaint.

¶43 A threshold question not specifically addressed by the parties is whether res judicata and collateral estoppel are procedural issues for the arbitrator or whether, instead, they touch on the question of arbitrability itself and are therefore questions of law for the court. We find no Washington case addressing these questions. We look then to federal case law for guidance. *See Clark County Pub. Util. Dist.*, 150 Wn.2d at 246.

¶44 Generally, the question of arbitrability is an issue of law that we will review de novo, with the burden on the party seeking to avoid arbitration. *See Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004). We apply ordinary state contract law principles when we pass on the validity of an agreement to arbitrate. *First Options of Chi., Inc v. Kaplan*, 514 U.S. 938, 943-44, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *McKee v. AT&T Corp.*, 164 Wn.2d 372, 383, 191 P.3d 845 (2008). Here, the CBA contains no specific provision purporting to characterize arbitrability issues or who will decide those questions.

¶45 The Guild cites to *George Day Construction Co. v. United Brotherhood of Carpenters & Joiners of America, Local 354* for the proposition that the County waived its ability to now assert res judicata or collateral estoppel as an arbitrability issue because it asked the arbitrator to decide that question. 722 F.2d 1471, 1475 (9th Cir. 1984). There, the court held that an employer must either object to the arbitrator's authority to decide arbitrability and refuse to argue arbitrability or reserve a question of jurisdiction by making an express objection on the record. *Id.* at 1474-75.

The issue is then preserved for judicial scrutiny when a proper objection is made, even if the parties then proceed to the merits of the grievance. *Id.* at 1475 (employer failed to preserve objection to arbitrator deciding arbitrability question); *see also Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725 (9th Cir. 1991); *Franklin Elec. Co. v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am.*, 886 F.2d 188, 191-92 (8th Cir. 1989).

¶46 The Supreme Court in *First Options* agreed that parties may contractually agree to submit the question of arbitrability itself to arbitration, but, it goes on, such an agreement must be clear and unmistakable in order to be enforced. *First Options*, 514 U.S. at 943-44. The dispute is subject to independent judicial review when a party has not clearly agreed to submit the question of arbitrability to arbitration. *Id.* at 947; *cf. Mount Adams Sch. Dist. v. Cook*, 150 Wn.2d 716, 720, 81 P.3d 111 (2003) (CBA contained provision to submit substantive and procedural arbitrability issues to arbitrator).

¶47 Several federal courts have held that when the objection to arbitration is based on a prior court judgment from the same jurisdiction (res judicata), the question of arbitrability is for the court. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1134 (9th Cir. 2000); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137-38 (3d Cir. 1998); *Miller v. Runyon*, 77 F.3d 189, 194 (7th Cir. 1996); *In re Y&A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 498-99 (5th Cir. 1986). The courts typically reason that federal courts must protect the finality and integrity of prior judgments. *See John Hancock*, 151 F.3d at 138.

¶48 On the other hand, courts generally consider collateral estoppel a legal defense related to the merits that is therefore a matter for the arbitrator. *See U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 817 (2d Cir. 1996); *Local Union No. 370 of Int'l Union of Operating Eng'rs v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir. 1986); *see also*

*Runyon*, 77 F.3d at 194 (suggesting but not deciding that collateral estoppel is a question for the arbitrator); *Collins v. D.R. Horton, Inc.*, 252 F. Supp. 2d 936, 944 (D. Ariz. 2003). The rationale is that in asserting collateral estoppel, a party is usually seeking to merely constrain the arbitrator's consideration of issues related to a claim. *See Runyon*, 77 F.3d at 194; *see also Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 918 N.E.2d 1140, 335 Ill. Dec. 327 (2009). Indeed, in *Howsam*, the United States Supreme Court expressly referenced estoppel as an issue of procedural arbitrability for the arbitrator. *Howsam*, 537 U.S. at 85.

¶49 Here, the County did not raise res judicata or collateral estoppel as defenses in the first appeal to this court. Ms. Bartleson's Benton County civil suit was still pending, and the County had yet to move for summary judgment. The County did propose the following issue to the arbitrator:

> "Do the previous decisions by the Yakima County Civil Service Commission and Benton County Superior Court bar re-litigation of the issues and claims decided therein based upon collateral estoppel and res judicata?"

CP at 309. The County also presented its issues "without waiving its objections to arbitration and rights of further appeal." CP at 309. In its postarbitration brief, the County again argued that the grievance was not arbitrable because it was barred by the doctrines of res judicata and collateral estoppel. Yakima County's Post Arbitration Br. at 27-30.

¶50 We conclude that the County adequately preserved res judicata for judicial review.

*Res Judicata*

¶51 Res judicata, or claim preclusion, bars the relitigation of claims and issues that were litigated, or might have been litigated, in a prior action. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995). For res judicata to apply, a prior judgment must have the

same (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of the persons for or against whom the claim is made (identity of interest). *Id.*; *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983). So the doctrine does not apply if the claims are not the same. *City of Kelso*, 137 Wn.2d at 171. Causes of action are identical for res judicata if (1) prosecution of the later action would impair the rights established in the earlier action, (2) the evidence in both actions is substantially the same, (3) infringement of the same right is alleged in both actions, and (4) the actions arise out of the same nucleus of facts. *Id.* (citing *Rains*, 100 Wn.2d at 664).

¶52 In her initial grievance, Ms. Bartleson alleged wrongful termination due to gender and disability discrimination and violation of the CBA disciplinary provisions. The sheriff denied the grievance because he said it was not disciplinary. He therefore concluded that the Civil Service Commission was the appropriate forum for her appeal. The Guild did not participate in the civil service proceeding or represent Ms. Bartleson. The issues were not decided because Ms. Bartleson voluntarily dismissed that appeal in favor of filing the civil suit for discrimination.

¶53 Discrimination claims in Washington are based on statute (chapter 49.60 RCW). It permits individual employees to vindicate their civil rights in court without first exhausting remedies provided by a collective bargaining agreement. *See Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 577-78, 731 P.2d 497 (1987), *overruled on other grounds by Phillips v. City of Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989); *Bruce v. Nw. Metal Prods. Co.*, 79 Wn. App. 505, 513, 903 P.2d 506 (1995).

¶54 Ms. Bartleson then sued the County and alleged as causes of action (1) gender discrimination and harassment, (2) disability discrimination, (3) retaliation, and (4) wrongful termination in violation of public policy. She also alleged common law causes of action of intentional and negligent infliction of emotional distress, and negligent hiring, supervision, and retention. On this latter claim, she alleged that

Yakima County "negligently evaluated plaintiff's fitness for duty by hiring Dr. Sawyer and using his unprofessional 'evaluation'." Employer's Ex. 18, at 9. She requested damages to include past and future lost wages and benefits. The Guild was not a party to her civil suit, her personal grievance, or her civil service appeal.

¶55 The Guild's grievance was different. The Guild sought contract remedies of reinstatement and back pay for violation of just cause, progressive discipline, and due process provisions of the CBA. The County argues that the Guild and Ms. Bartleson are in privity for purposes of the Guild's grievance insofar as it seeks relief on her behalf. *Robinson v. Hamed*, 62 Wn. App. 92, 100, 813 P.2d 171 (1991). We agree. But that does not help the analysis. The critical question for a res judicata analysis is whether the same persons and parties have already previously litigated the identical claims presented in the Guild's grievance.

¶56 The County says that the "genesis of Ms. Bartleson's civil action was the fitness for duty finding" and that "Ms. Bartleson and the Guild were, and are, in privity with one another." Br. of Resp't at 24-25. Further, "[r]easonable minds cannot differ that Ms. Bartleson's actions and the Guild's grievance arise out of the exact same facts and that the proceedings involve precisely the same evidence." Br. of Resp't at 25. Now, according to the County, the arbitrator's decision ignored the superior court's final judgment on the merits and the Civil Service Commission's final action. The County also points to the superior court's summary judgment "findings of fact" that the CBA authorized the fitness for duty examination; Ms. Bartleson failed to exhaust administrative remedies with the Civil Service Commission prior to resorting to a civil suit; the unfitness for duty finding gave the sheriff a nondiscriminatory, nonpretextual reason to terminate her; and she failed to establish a prima facie case under any of her alleged statutory discrimination or common law causes of action. The County thus urges us to conclude that any claims for Ms. Bartleson's wages and benefits were "extinguished" when her civil action was dismissed. Br. of Resp't at 27.

¶57 The Guild relies on *City of Kelso* for the proposition that the Civil Service Commission's and the court's proceedings are not dispositive of the Guild's CBA grievance. In *City of Kelso*, the question was whether a civil service commission decision upholding a police officer's suspension under a statutory civil service standard requiring that the suspension be "in good faith and for cause" barred the officer from also challenging the suspension in arbitration under the CBA, which required "just cause." *City of Kelso*, 137 Wn.2d at 168, 172-73. The court concluded that the two standards and the issue in the proceedings were not the same, even though both involved whether the officer's suspension was valid. *Id.* at 172. The commission hearing was based on a statutory right, while the arbitration was based on the more expansive CBA contractual right. *Id.* The evidence also differed—the commission focused on whether the officer violated department regulations, and the arbitrator examined whether the punishment was in proportion to the officer's offense. *Id.* at 175. Thus, the commission's decision, albeit correct under the civil service rules, was not dispositive of whether the police department had the authority to suspend him under the union contract. *Id.*

¶58 To further illustrate the distinction, the *City of Kelso* court stressed the holding in *Reese*:

> "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence."

*Id.* (quoting *Reese*, 107 Wn.2d at 576 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)) and citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988) (no conflict between state statutory retaliatory discharge claim and CBA grievance governed by federal labor law involving same factual considerations when

statutory claim not dependent on meaning of any CBA provision)).

¶59 The principles articulated in these cases apply here. Certainly, the factual "genesis" of all three of Ms. Bartleson's actions was an unfitness for duty finding that led to her termination. But the precise contract claims raised in the Guild's grievance were not raised or resolved by Ms. Bartleson's prior proceedings. The contractual and statutory rights are distinctly separate in nature. *Id.*; *Reese*, 107 Wn.2d at 576; *Gardner-Denver Co.*, 415 U.S. at 49-50.

¶60 Moreover, Ms. Bartleson and the Guild were not in privity in either her civil service appeal or her civil action. There is then no identity of claims or parties with her civil suit. The same holds true for the civil service commission dismissal. And, incidentally, findings of fact in a summary judgment order are superfluous. *See, e.g., Duckworth v. City of Bonney Lake*, 91 Wn.2d 19, 21-22, 586 P.2d 860 (1978).

¶61 Even if res judicata is then a threshold question of arbitrability for the courts, we conclude that the court erred in applying the doctrine of res judicata in a way that barred the Guild's grievance.

*Collateral Estoppel*

¶62 Collateral estoppel, or issue preclusion, bars litigation of an issue in a subsequent proceeding involving the same parties. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). Collateral estoppel is not res judicata " 'in that, instead of preventing a second assertion of the same claim or cause of action, it prevents a second litigation of issues between the parties, even though a different claim or cause of action is asserted.' " *Rains*, 100 Wn.2d at 665 (quoting *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 225-26, 588 P.2d 725 (1978)). The party seeking to avoid litigation of an issue based on collateral estoppel must show "that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding

ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied." *Christensen*, 152 Wn.2d at 307. Collateral estoppel may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in a prior proceeding. *Id.*

¶63 Collateral estoppel issues are procedural prerequisites and should then be decided by the arbitrator. *Howsam*, 537 U.S. at 85; *Nat'l Gypsum Co.*, 101 F.3d at 817; *Runyon*, 77 F.3d at 194; *Morrison-Knudsen Co.*, 786 F.2d at 1358; *Collins*, 252 F. Supp. 2d at 944. The County cites no case law, and we find none, that holds collateral estoppel is a threshold question of arbitrability for the court. The arbitrator ruled that identity of parties was lacking. The arbitrator ruled, in essence, that the Guild's contract issues pertaining to the County's alleged violation of CBA disciplinary/notice procedures were not present in the civil service and the superior court proceedings. We will defer to the arbitrator's decision without further addressing the collateral estoppel issue on its merits.

¶64 We conclude that the superior court erred in ruling the Guild's grievance was barred by res judicata or collateral estoppel.

PUBLIC POLICY—UNFIT OFFICER

¶65 The County next contends that the arbitrator's award must, in any event, be reversed because he disregarded unequivocal and overwhelming evidence that Ms. Bartleson was unfit for duty. The County argues that the Guild failed to prove otherwise and even its own expert, Dr. Pollock, concurred that Ms. Bartleson needed treatment and should not have returned to the workplace. The County also complains that the arbitrator imposed a "standardized testing" component to fitness for duty evaluations that is neither part of the CBA nor consistent with Washington

law. He then exceeded his authority under the CBA when he substituted his judgment of what was "fair" or "appropriate" for the judgment of medical experts. The County also argues that the arbitrator exceeded his authority under the CBA by making a fitness for duty determination that equated "fitness" and "discipline" under the grievance provisions to remedy what he personally believed was an unjust pretextual termination. Finally, the County maintains that ultimately the arbitrator's decision to reinstate Ms. Bartleson without any showing of fitness for duty violates the CBA and clear public policy against mentally unfit people working as law enforcement officers. And the County invites us to intervene because here the arbitrator disregarded the evidence and the law and rendered a decision that is contrary to public policy. *Kitsap County Deputy Sheriff's Guild v. Kitsap County*, 140 Wn. App. 516, 165 P.3d 1266 (2007), *rev'd*, 167 Wn.2d 428.

¶66 The arbitrator is confined to interpretation and application of the CBA. *Clark County Pub. Util. Dist.*, 150 Wn.2d at 245 (review of arbitration decision limited to whether arbitrator acted illegally by exceeding his authority under the contract); *Yakima Police Patrolman's Ass'n*, 148 Wn. App. at 192-93.

¶67 We have already concluded that the arbitrator acted within his authority. He construed the CBA and incorporated civil service rules to mean that a medical fitness discharge is a grievable discipline issue that requires the employer to show just cause and afford procedural due process before terminating a tenured employee. The County's argument that the arbitrator exceeded his authority under the CBA by equating "fitness" with "discipline" is not further reviewable. Also, the arbitrator did not make a fitness for duty determination. He made a finding based upon the medical testimony that the County failed to prove Ms. Bartleson was unfit for duty and that the County used unfitness as a pretext to terminate her without just cause and without due process. This was within the arbitrator's authority. *Clark County Pub. Util. Dist.*, 150 Wn.2d at 245.

¶68 The County relies on *Yakima Police Patrolman's Ass'n*. It is distinguishable. There, the arbitrator exceeded his authority by failing to properly apply a last chance agreement, the violation of which automatically subjected the employee to termination. There, the arbitrator made additional factual findings as to whether the employee's violation of the last chance agreement was deliberate. *Yakima Police Patrolman's Ass'n*, 148 Wn. App. at 196-97. This he was not authorized to do. Here, the arbitrator made no such unauthorized findings.

¶69 We, like the trial court, sit in review. We do not then reach the merits of the case even if we think the arbitrator was wrong. *Clark County Pub. Util. Dist.*, 150 Wn.2d at 245. "[T]he arbitrator is the final judge of both the facts and the law, and 'no review will lie for a mistake in either.' " *Id.* (quoting *State Pers. Bd.*, 61 Wn. App. at 785).

¶70 The County nevertheless invites us to review the record on the merits and agree that Ms. Bartleson was mentally unfit for duty and then conclude as a matter of public policy she should have been terminated. This we will not do. First, the arbitrator found that Ms. Bartleson was not unfit for duty, and that determination by the arbitrator is not further reviewable. Any claim based on a public policy then fails.

¶71 Moreover, the County relies on the Court of Appeals decision in *Kitsap County*, 140 Wn. App. 516. That decision was reversed by the Supreme Court. 167 Wn.2d 428. And the Supreme Court's decision in *Kitsap County* does not help the County, in any event.

¶72 In *Kitsap County*, a sheriff's deputy was fired for 29 documented incidents of misconduct, including untruthfulness. An arbitrator determined termination was not the appropriate penalty. The Court of Appeals overturned the arbitrator's decision as contrary to public policy. The guild appealed to the Supreme Court, which framed the issue as whether an arbitration decision reinstating a deputy sheriff who has been found to be untruthful violated an explicit, well defined, and dominant public policy and must therefore

be vacated. *Kitsap County*, 167 Wn.2d at 431. The issue presented a question of law the court reviewed de novo. *Id.* at 434.

¶73 The *Kitsap County* court first reiterated the limited review standards, which provide that the courts will decide if an arbitrator exceeded his or her legal authority but do not review the arbitrator's decision for mistakes of fact or law. *Id.* at 434-35 (citing *Clark County Pub. Util. Dist.*, 150 Wn.2d at 245-47). The court then followed both federal and state precedent and adopted a narrow public policy exception to the arbitration enforcement rules that "is limited to decisions that violate an 'explicit,' 'well defined,' and 'dominant' public policy, not simply 'general considerations of supposed public interests.' " *Id.* at 435 (internal quotation marks omitted) (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000)). The court must treat the arbitrator's decision as if it were part of the collective bargaining contract. *Id.*

¶74 In *Kitsap County*, the court ultimately held that the county failed to demonstrate an explicit, well defined, and dominant public policy violated by the arbitration award. The court first reasoned that the county's cited state criminal statutes prohibiting anyone from knowingly making false statements to public servants or obstructing law enforcement officers (RCW 9A.76.175, .020), and those that prohibit public officers from knowingly making false statements in an official report or statement or committing misconduct (RCW 42.20.040; RCW 9A.80.010), did not prohibit reinstatement of any officer found to violate them. *Kitsap County*, 167 Wn.2d at 436-37. Second, the court rejected the county's contention that the *Brady*[2] rule, requiring prosecutors to disclose exculpatory evidence, exemplifies a public policy against reinstatement of officers found to be untruthful because prosecutors would have to disclose the officer's record of dishonesty in any criminal

---

[2] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

proceeding where he served as a witness. The court reasoned that even if true, it would not be sufficient to vacate the arbitration decision because it does not constitute an explicit, well defined, and dominant public policy prohibiting the officer's reinstatement. *Id.* at 438.

¶75 Here, the County contends, "There can be no public policy more vital and fundamental than that of allowing only mentally stable individuals to hold positions where they are authorized to enforce the law, by deadly force if necessary." Br. of Resp't at 42. The County emphasizes a strong public interest in ensuring that only mentally competent deputies are allowed to carry weapons (RCW 9.41-.040(2)(a)(ii), .098(1)(g)), operate patrol vehicles at high speeds (RCW 46.01.011; RCW 46.20.031(4), .041(1), .305(1)), and deprive ordinary citizens of their liberty while enforcing the law. In addition, the County points to case law restricting gun possession by convicted felons and former mental patients, as well as case authority that employers may incur tort liability for negligent hiring and retention of employees who injure others. Br. of Resp't at 42 nn.153 & 155. The County continues that the public has a vested interest in protecting the deputies and integrity of the sheriff's office, as they are the last line of defense between law abiding citizens and criminals. Finally, the County says that Ms. Bartleson is mentally incompetent and therefore incapable of performing a key component of a law enforcement officer's job—acting as a witness. RCW 5.60.020. For these reasons, the County concludes that reinstating Ms. Bartleson to a position of great public trust is clearly against public policy. Br. of Resp't at 43.

¶76 The County's citations reflect our state's public policy to restrict insane and mentally incompetent persons in general from using firearms, operating vehicles, and testifying as witnesses. These statutory restrictions would obviously apply equally to law enforcement officers who are mentally incompetent. But here we need not reach the question of whether the public policy exception might apply. In *Kitsap County*, the fact of officer misconduct and un-

truthfulness was established. Here, the arbitrator concluded that Ms. Bartleson was not unfit for duty. The court in *Kitsap County* had to decide whether public policy precluded reinstatement of an untruthful, unreliable officer. Simply put, no public policy is implicated on the facts found here.

¶77 The superior court's order vacating the arbitration award cannot be affirmed on the suggested alternate ground of a violation of public policy.

ATTORNEY FEES

¶78 We left the question of fees to the arbitrator in the first appeal: "[W]e leave the remaining procedural questions to the arbitrator, including the Guild's entitlement to attorney fees, if any, under its cross-appeal theory." *Yakima County Law Enforcement Officers Guild*, 133 Wn. App. at 288.

¶79 The arbitrator then concluded that Ms. Bartleson's discharge was "discipline" within the meaning of the CBA, that the dispute was clearly arbitrable, and that the County's refusal to arbitrate was a breach of the CBA without substantial justification. He then awarded the Guild attorney fees. The attorney fees award was, of course, overturned when the superior court vacated the arbitrator's award.

¶80 The Guild contends it is entitled to its attorney fees because it had to compel arbitration. It argues that the arbitrator is the final judge of both the law and the fact, and so his ruling on attorney fees is final and binding. *Id.* at 288-89.

¶81 The County says the Guild concedes there is no statutory or contractual basis for an attorney fee award. Br. of Resp't at 45. And CBA section 20.8 step 3(f)(ii) requires each party to pay its own expenses. Moreover, the County continues, the Guild never requested attorney fees in its grievance. The CBA is explicit that the arbitrator shall consider only those issues raised in step 1 or step 2 and shall have no authority to determine other issues not

submitted. CBA § 20.8 step 3(e)(iii). The only issues submitted were whether the discharge of Ms. Bartleson was appropriate and whether she was entitled to reinstatement and back wages. Furthermore, CBA section 20.8 step 3(e)(i) expressly provides that "[t]he arbitrator shall not have the authority to add to, subtract from, alter, change or modify the terms of the Agreement." Employer's Ex. 1, at 20. The County then urges that the arbitrator exceeded his authority under the CBA when he awarded the Guild attorney fees. It also argues that the award is not justified in equity, as this court has already held that the County did not act in bad faith or vexatiously.

¶82 Attorney fees may be awarded only when authorized by a contract, statute, or recognized ground in equity. *E.g., Hsu Ying Li v. Tang*, 87 Wn.2d 796, 797-98, 557 P.2d 342 (1976). Federal courts authorize an award of fees in equity when an employer, in bad faith or without justification, refuses to proceed to arbitration. *See* John B. Spitzer, Annotation, *Labor Arbitration: Recoverability of Attorneys' Fees in Action To Compel Arbitration or To Enforce or Vacate Award*, 80 A.L.R. FED. 302 (1986); *Int'l Bhd. of Elec. Workers Local Union No. 2022 v. Teletype Corp. Little Rock, Ark.*, 551 F. Supp. 676 (E.D. Ark. 1982); *Int'l Longshoremen's & Warehousemen's Union, Local 6 v. Cutter Labs.*, 552 F. Supp. 979, 981-82 (N.D. Cal. 1982). The Guild argued this theory in its first appeal. Guild's Ex. 37, at 38-42. The County did not seek further review of our decision. And so, referral of the attorney fees question to the arbitrator and his authority to decide the issue is the law of the case. *Roberson*, 156 Wn.2d at 41.

¶83 The County is correct that CBA section 20.8 step 3(f)(ii) requires each party to pay its own expenses in arbitration. Thus, it is not surprising that the Guild did not request attorney fees in its grievance. But the Guild asserts an equitable basis for fees based on the employer's refusal, "without justification," to even proceed to arbitration. Consistent with our directive, the arbitrator did not award fees on the basis of bad faith—only for refusing to arbitrate "without justification." Arbitrator's Decision at 53.

¶84 The arbitrator did not exceed his authority under the CBA because he did not award fees pursuant to the CBA but only on the equitable ground authorized in our first opinion. We will not review further the arbitrator's decision to award fees for legal or factual error. *Clark County Pub. Util. Dist.*, 150 Wn.2d at 245.

¶85 We reinstate the arbitrator's decision to award attorney fees to the Guild. The Guild requested fees only for the court action preceding arbitration and not for expenses incurred in the arbitration proceeding itself.

ARBITRATOR'S ORDER FOR TRAINING AND COUNSELING

¶86 The arbitrator ordered Sheriff Irwin and three of his department supervisors to take training on proper methods of conducting internal investigations and counseling to improve interaction and relationships with Ms. Bartleson and other employees who experience personal crisis or tragedy. The officers supervised and oversaw various internal investigations of Ms. Bartleson, including alleged inappropriate conduct that was part of the information given to Dr. Sawyer.

¶87 The County contends that nothing in the CBA authorizes the arbitrator to impose the training and counseling requirements. And moreover the Guild did not request this remedy. The arbitrator simply decided on his own to impose these punitive requirements without any contractual support.

¶88 The County did raise this issue in its writ of certiorari to superior court. And the court vacated the arbitrator's award on other grounds and thus did not rule on the issue. *See* CP at 27.

¶89 That aside, Washington law is well settled that arbitrators have the authority to fashion a remedy necessary to the resolution of the dispute, including remedies not specifically requested in the grievance. *Endicott Educ. Ass'n v. Endicott Sch. Dist. No. 308*, 43 Wn. App. 392, 394-95, 717 P.2d 763 (1986). Federal law is the same. *United Steelwork-*

*ers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

¶90 The court in *Endicott Education Ass'n* quoted from *Board of Education, Fairbanks North Star Borough School District v. Ewig*[3] to the effect that the arbitrator is given a wide latitude in fashioning an appropriate remedy and if the arbitrator's power is limited to adjudicating the breach, then parties will be forced into court to seek complete relief. *Endicott Educ. Ass'n*, 43 Wn. App. at 395. The court also cited to *North Beach Education Ass'n v. North Beach School District No. 64*[4] for the proposition that the arbitrator must fashion a remedy appropriate to the seriousness of the contractual violation and circumstances, limited only by the arbitrator's creativity subject to the bounds of the law and the negotiated contract. *Endicott Educ. Ass'n*, 43 Wn. App. at 395. The County cites no authority to the contrary.

¶91 The arbitrator did not exceed his authority under the CBA in fashioning a remedy that included training and counseling. We cannot further review the merits of this remedy.

THE GUILD'S DOUBLE WAGE CLAIM

¶92 The Guild next contends it is entitled to the statutory remedies for failure to pay wages under Washington's wage rebate statute, chapter 49.52 RCW.

¶93 That statute provides that "[a]ny employer . . . who . . . [w]ilfully and with intent to deprive the employee of any part of his wages . . . than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . . [s]hall be guilty of a misdemeanor." RCW 49.52.050(2). A willful withholding under RCW 49.52.050(2) is a basis for exemplary damages in a civil action of "twice the amount of the wages unlawfully . . . withheld . . . together

---

[3] *Bd. of Educ., Fairbanks N. Star Borough Sch. Dist. v. Ewig*, 609 P.2d 10, 12-13 (Alaska 1980).

[4] *N. Beach Educ. Ass'n v. N. Beach Sch. Dist. No. 64*, 31 Wn. App. 77, 85-86, 639 P.2d 821 (1982).

with costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070.

¶94 "Willful withholding" is "the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment." *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 300, 745 P.2d 1 (1987); *see Champagne v. Thurston County*, 163 Wn.2d 69, 81, 178 P.3d 936 (2008). "Willful" means that the act is volitional and " 'that the person knows what he is doing, intends to do what he is doing, and is a free agent.' " *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159-60, 961 P.2d 371 (1998) (internal quotation marks omitted) (quoting *Brandt v. Impero*, 1 Wn. App. 678, 681, 463 P.2d 197 (1969)). A "bona fide" dispute is a " 'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." *Id.* at 161; *Champagne*, 163 Wn.2d at 81. The issue of willfulness ordinarily presents a question of fact, but when no dispute exists as to the material facts, we may dispose of the question summarily. *Schilling*, 136 Wn.2d at 160; CR 56(c).

¶95 Here, it is undisputed that the first part of the willfulness test is met because the County is intentionally refusing to reinstate Ms. Bartleson and pay the back wages awarded by the arbitrator. The question is whether there is a bona fide dispute. The Guild's position is that the County is concocting baseless legal arguments that do not create a bona fide dispute and that the superior court ruling cannot infuse the County's arguments with validity when none otherwise exists. Br. of Appellant at 35, 37; Reply Br. of Appellant at 23.

¶96 But judicial review of an arbitration decision under a constitutional writ of certiorari, while limited, is available to determine whether the arbitrator acted illegally. *Clark County Pub. Util. Dist.*, 150 Wn.2d at 246-47; *Beck*, 104 Wn. App. at 460. The arbitrator is the final judge of both the facts and the law, and his decision is not reviewable on the merits. *Clark County Pub. Util. Dist.*, 150 Wn.2d at 245.

¶97 Nevertheless, whether res judicata prohibited arbitration of certain issues was fairly debatable and properly the subject of judicial review. *Chiron Corp.*, 207 F.3d at 1134; *John Hancock*, 151 F.3d at 137-38; *Runyon*, 77 F.3d at 194; *Y&A Grp.*, 38 F.3d at 382; *Miller Brewing*, 781 F.2d at 499. And the County reserved the right to appeal that issue despite submitting it to the arbitrator. The County therefore properly raised the question of res judicata in its writ of certiorari to superior court. A res judicata bar would warrant vacating the arbitrator's award (as the superior court did here). It is then a bona fide dispute and the County did not willfully withhold wages pending the superior court's decision.

¶98 The Guild's cited case, *Highland School District No. 203 v. Racy*, is distinguishable but instructive. 149 Wn. App. 307, 202 P.3d 1024 (2009). There, the CBA expressly provided that questions about arbitrability would be decided by the arbitrator. The union filed a grievance on behalf of two teachers after the district declined to renew their coaching contracts. The district filed a superior court action seeking to enjoin the arbitration. The court relied on a recent case, *Mount Adams School District*.[5] It involved the same CBA provision. That provision left the question of whether the dispute was arbitrable to the arbitrator. The court then concluded that the CBA precluded it from deciding that question. The court then dismissed the district's action as frivolous and awarded attorney fees to the union. The district did prevail at arbitration when the arbitrator ruled the issues relating to coaching contracts were not protected by the CBA. The district then sought reconsideration of the court's sanctions. The court denied that motion and ordered the district to pay additional attorney fees. On appeal, we upheld the sanctions. We concluded that the district's action was frivolous because the court in *Mount Adams School District* had resolved the specific issue and the district nonetheless proceeded with its lawsuit. *Highland Sch. Dist.*, 149 Wn. App. at 313-14.

---

[5] *Mount Adams Sch. Dist.*, 150 Wn.2d 716.

¶99 Here, on the other hand, the CBA does not contain a provision leaving questions of arbitrability to the arbitrator. Arbitrability decisions left to the arbitrator by our ruling in the first appeal became nonreviewable. But the matter of who decides res judicata as a question of arbitrability was not resolved by any court or agreed on by the parties. It was rather reserved as an issue on appeal when the County raised it in arbitration. Thus, unlike the district's court action in *Highland School District*, the County's writ of certiorari to superior court was not frivolous. We therefore conclude that there was no willful failure to pay wages.

¶100 The Guild's other cited cases are also inapposite. *Morrison v. Basin Asphalt Co.*, 131 Wn. App. 158, 127 P.3d 1 (2005) (bona fide dispute over truckers' wages precluded finding that employers' failure to pay prevailing wage was willful); *Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13, 111 P.3d 1192 (2005) (employer's implausible rationale for failure to pay employee signing bonus supported finding of willful deprivation of wage payment).

¶101 Accordingly, we deny the Guild's double wage claim.

POSTARBITRATION REQUESTS

*Attorney Fees*

¶102 The Guild argues that its enforcement of the arbitrator's award reinstating Ms. Bartleson amounts to a successful wage recovery action that entitles it to attorney fees under RCW 49.48.030 (attorney fees in action on wages). *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 42 P.3d 1265 (2002). And the Guild argues that although it waived fees in the CBA for arbitration proceedings, that waiver does not apply to the Guild's judicial action outside of arbitration. The Guild does not request attorney fees for this appeal. It wants fees for having to enforce the arbitrator's award in superior court.

¶103 The relevant statute authorizes fees for successful actions to recover wages or salaries. RCW

49.48.030. The statute is remedial and is liberally construed to advance the legislature's intent to protect employee wages and ensure payment. *City of Everett*, 146 Wn.2d at 34. And the statute applies to labor unions that recover wages for its members through grievance arbitration. *Id.* at 51.

¶104 But the right to recover attorney fees can be waived by the parties in a CBA. *Id.* at 49 (citing *Hitter v. Bellevue Sch. Dist. No. 405*, 66 Wn. App. 391, 397-99, 832 P.2d 130 (1992)). The waiver must be clear, unmistakable, and knowingly made. *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 462, 938 P.2d 827 (1997).

¶105 And the right to fees was waived here: "Each party shall pay the expenses of their own representatives, witnesses and other costs associated with the presentation of their case. The cost and expense of the arbitrator shall be borne equally by the parties." Guild's Ex. 44, at 18 (CBA § 20.8 Step 3(f)(ii)).

¶106 The Guild contends this "waiver" should be narrowly construed and when so construed the Guild did not waive its statutory right to fees for its efforts in superior court. The CBA in *City of Everett*, the case the Guild relies on here, did not contain an attorney fee waiver clause. And so *Hitter* is more on point.

¶107 In *Hitter*, the school discharged a teacher's aide. The aide demanded arbitration pursuant to his union's CBA. The CBA provided that each party should bear its own fees and expenses:

"... The fees and expenses of the arbitrator shall be shared equally by the District and the Union. All other expenses shall be borne by the party incurring them, and neither party shall be responsible for the expenses of witnesses called by the other."

*Hitter*, 66 Wn. App. at 397. Mr. Hitter, the aide, prevailed at arbitration and then sued in superior court for damages for emotional distress and defamation, and for attorney fees. The court dismissed the claims and denied the request for attor-

ney fees. *Id.* at 395-96. Mr. Hitter appealed. The court held that the right to attorney fees under RCW 49.48.030 (fees in suit for wages) could be waived in a CBA. Thus, under the provision in question, Mr. Hitter was "not entitled to reasonable attorney's fees for amounts incurred during the arbitration or on appeal." *Id.* at 399.

¶108 The waiver language of the CBA here is not materially different from that in *Hitter.* Clearly, under *Hitter,* the Guild has waived any statutory right to collect attorney fees for the arbitration proceeding itself, and the Guild does not contend otherwise. The question then becomes whether the *Hitter* reasoning applies here to the Guild's superior court proceeding to enforce the arbitrator's back wage award.

¶109 The Guild's breach of contract (wage recovery) action is for us the "appeal" in *Hitter.* The Guild sought judicial review of the arbitrator's decision, albeit for enforcement purposes. The superior court proceedings are then not so attenuated from the arbitration proceeding itself as to be separate for purposes of attorney fee recovery under RCW 49.48.030 and was then waived by the CBA.

*Prejudgment Interest*

¶110 The Guild next contends the wages and attorney fees awarded by the arbitrator were due promptly upon delivery of the arbitration award. And therefore the Guild is entitled to prejudgment interest on the award. *City of Moses Lake v. Int'l Ass'n of Firefighters, Local 2052,* 68 Wn. App. 742, 847 P.2d 16 (1993). And the Guild argues that under chapter 39.76 RCW, interest is due on unpaid public debts not paid within 30 days.

¶111 The application of prejudgment interest to an arbitration award is generally an issue for the arbitrator, not the courts. *See Westmark Props., Inc. v. McGuire,* 53 Wn. App. 400, 401, 766 P.2d 1146 (1989) (court erred in adding prejudgment interest to arbitration award because it is part of merits of controversy that is forbidden territory for a court); *see also Dep't of Corr. v. Fluor Daniel, Inc.,* 160 Wn.2d 786, 788 n.2, 161 P.3d 372 (2007).

¶112 The Guild relies on *City of Moses Lake*. That case involved interest arbitration following stalled salary negotiations. It was not a grievance arbitration. *City of Moses Lake*, 68 Wn. App. at 743-45. The difference is important. We held that prejudgment interest was appropriate on the wage increase awarded by the arbitration panel because the amount based on Consumer Price Index data was liquidated on the date of the award. *Id.* at 744-45. As the court explained in *City of Everett*, interest arbitration and grievance arbitration serve different purposes. Interest arbitration " 'is used to determine the terms of the contract between the parties when they cannot negotiate an agreement and results in a new agreement. Grievance arbitration is used to resolve labor disputes through the interpretation and application of an already existing collective bargaining agreement.' " *City of Everett*, 146 Wn.2d at 46-47 (quoting *City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 376, 831 P.2d 738 (1992)). Thus, unlike in interest arbitration, an employee in a grievance arbitration is seeking to vindicate an existing right. *Id.* at 47.

¶113 This is a grievance arbitration. Again, the issue of prejudgment interest is an issue for the arbitrator. And the Guild did not raise this issue. Accordingly, the arbitrator did not mention prejudgment interest in his award. The superior court would not then have had authority to add prejudgment interest to the arbitrator's award.

¶114 Whether the Guild can raise this issue on remand to the arbitrator is an issue we will not pass on. The arbitrator expressly retained jurisdiction over the remedies. *See* Arbitrator's Decision at 55. And CBA section 20.8 step 3(f)(iv) authorizes this: "Any dispute over the application of the arbitrator's award shall be returned to the arbitrator for resolution." Guild's Ex. 44, at 18.

¶115 In sum, prejudgment interest was not awardable by the superior court and we will not review the claim here.

## HOLDING

¶116 We reverse the superior court order to the extent that it vacated the arbitrator's award. We reinstate the arbitrator's award in its entirety and remand to the arbitrator for further proceedings. We affirm the superior court order to the extent it dismissed the Guild's claims for double wages, attorney fees for postarbitration judicial proceedings, statutory attorney fees for wage recovery, and prejudgment interest.

KULIK, C.J., and BROWN, J., concur.